WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
    Plaintiffs

U. S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2019 JUN 24  A 11: 41

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ             Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
Plaintiffs

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

---

**ANSWER TO THE ORDER OF MAY 31, 2019 TO SHOW CAUSE WHY THIS MATTER SHALL NOT BE TRANSFERRED TO THE FEDERAL DISTRICT COURT ENCOMPASSING THE COURT OF COMMON PLEAS OF MONROE COUNTY, THE FEDERAL DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

---

      Plaintiffs William Kaetz and Catherine Kaetz respectfully file this answer to

the Order of May 31 2019 to show cause why this matter shall not be transferred to

the Federal District Court encompassing the Court of Common Pleas of Monroe

County, the Federal District Court for the Middle District of Pennsylvania.

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ………………………..…….…………………6

PROCEDURAL HISTORY …………………………….…………….…………6

STATEMENT OF FACTS RELEVANT TO THE UNITED STATES

DISTRICT COURT OF NEW JERSEY BEING PROPER VENUE …………….. 9

DISCUSSION ...............................……………….……....…………………12

ARGUMENT ..……………….……....………………………….…………….. 16

    **1.** 28 USC 1391(b)(2), (c), and (f)(1) and the Texas Law Review and New

       Jersey State Laws support the United States District Court of New

       Jersey having venue and jurisdiction over the defendant and subject

       matter jurisdiction is supported under 42 U.S.C. § 1983 and under

       diversity jurisdiction.

CONCLUSION ………………………….…..……………………………………19

## TABLE OF JUDGEMENTS, ORDERS AND RULINGS

Order of 5/31/2019………...………………………...……...……**Pa33 – Pa35**

PFA Warrant of 1/29/2018………………………………………..……**Pa37**

PFA Final Order of 2/5/2018…..……………………………………**Pa38 – Pa40**

Extradition Order of 9/13/2018 ………..…..…..………………….…..……**Pa44**

PA Bail Bond Order of 9/19/2018 ……...……..……………………...……**Pa45**

## TABLE OF APPENDIX

Docket Sheet  ……….…………………………………..……………… **Pa1 – Pa2**

Original Complaint  …………………………………….…….....……… **Pa3 – Pa10**

Motion for Court Order to Subpoena Records and for an Injunction….**Pa11 – Pa17**

Certificate of service …………………………………………....….….**Pa18 – Pa21**

Motion for Default Judgement  ………………………………………..**Pa22 – Pa28**

Plaintiffs' proposed order………………………………….…..…….…**Pa29 – Pa32**

Order of 5/31/2019………....……………………………..……....…….**Pa33 – Pa35**

PFA Complaint of 1/28/2018…………………………………….…..…….**Pa36**

PFA Warrant of 1/29/2018…………………………………………..…….**Pa37**

PFA Final Order of 2/5/2018 …….…………………………………**Pa38 – Pa40**

New Milford NJ Arrest Record of 9/7/2018………………………………....…**Pa41**

Inmate Look up Bergen County Jail ………………………………………....…**Pa42**

Extradition Waiver of 9/13/2018 ………....…….………………….…….…**Pa43**

Extradition Order of 9/13/2018  ………....….………………………….…….**Pa44**

PA Bail Bond Order of 9/19/2018 ……....…….…………………….…..…..**Pa45**

28 U.S. Code § 1391  …….………………………………………**Pa46 – Pa48**

28 U.S. Code § 1404 ……………………………………………………..…**Pa49**

28 U.S. Code § 1406 …………………………………………………....…**Pa50**

28 U.S. Code § 1631 …………………………………………………….…**Pa51**

Diane P. Wood "Federal Venue: Locating the Place Where the Claim Arose,"

54 Texas Law Review 392 (1976) . …………….………………..……**Pa52 – Pa82**

## TABLE OF AUTHORITIES

**PAGE**

28 U.S. Code § 1391 …..………………………………………….…..…**Pg12**

28 U.S. Code § 1404 ……………………………………………….....**Pg13**

28 U.S. Code § 1406 ………………….…………………………….....**Pg15**

28 U.S. Code § 1631 …………………….………………………….....**Pg15**

Crepy v. Benckiser, Law Div.-Essex Cnty. (Mitterhoff, J.S.C.)

DOCKET NO.: ESX-L-730-15, February 19, 2016 ……..……...**Pg11, Pg14, Pg19**

See Diane P. Wood "Federal Venue: Locating the Place Where the Claim Arose,"

54 Texas Law Review 392 (1976) for more citations…………..…..….**Pa52 – Pa82**

## PRELIMINARY STATEMENT

28 USC 1391(b)(2), (c), and (f)(1) and the Texas Law Review and New Jersey Law support the United States District Court of New Jersey being proper venue of this case because a substantial part of the events and omissions giving rise to the claim occurred in the venue of the United States District Court of New Jersey, the victims abode is in the venue of the United States District Court of New Jersey, and the property subject to the action is situated in the venue of the United States District Court of New Jersey.

## PROCEDURAL HISTORY

1.      On 10/09/2018 Plaintiffs William Kaetz and Catherine Kaetz filed their Complaint with Jury Demand against the Court of Common Pleas of Monroe County Pennsylvania paying the filing and Admin fee of $400.00. **(Pa3 – Pa10)**

2.      On 10/09/2018 Plaintiffs William Kaetz and Catherine Kaetz filed their Motion for Court Order to Subpoena Records and for an Injunction. **(Pa11 – Pa17)**

3.      On 10/12/2018 the court clerk Set Deadlines as to the Plaintiffs' Motion for Permanent Injunction. Motion was set for 11/5/2018 before Judge Claire C. Cecchi. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. **(Pa1 – Pa2)**

**4.** On 10/12/2018 Summons were issued as to Court of Common Pleas of Monroe County. **(Pa1 – Pa2)**

**5.** On 10/29/2018 Certificate of Service of the defendant being served the Summons and Complaint and Motion was filed by Plaintiffs William Kaetz and Catherine Kaetz. **(Pa18 – Pa21)**

**6.** On 02/05/2019 – (99 days after defendant being served) - Plaintiffs William Kaetz and Catherine Kaetz filed a Motion for Entry of Default with supporting attachments; an Affidavit of Catherine Kaetz, an Affidavit of William F. Kaetz, the Certificate of Service documents, and a proposed Order for an Entry of Default, with Certificate of Service of motion and supporting documents to defendant. **(Pa22 – Pa28)**

**7.** On 2/05/2019 The Court Clerk failed to record an Entry of Default upon the defendant and chose to submit the Default to Judge Claire C. Cecchi. **(Pa1 – Pa2)**

**8.** On 02/05/2019 the Court Clerk Set Deadlines as to Plaintiffs' Motion for Entry of Default. Motion set for 3/4/2019 before Judge Claire C. Cecchi. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk's Office and does not supersede any previous or subsequent orders from the Court. **(Pa1 – Pa2)**

**9.** On 05/13/2019 – (97 days after motion for default filed) - Plaintiffs William Kaetz and Catherine Kaetz filed a Proposed Order for default with Certificate of Service to defendant. **(Pa29 – Pa32)**

**10.** On 05/31/2019 – (214 days has past (7 months and 2 days) and defendant has failed to appear, plead or otherwise defend within the time allowed and, therefore, is now in default) - an ORDER was filed by Judge Claire C. Cecchi that Plaintiffs will show cause in writing why this matter shall not be transferred to the Federal District Court encompassing the Court of Common Pleas of Monroe County, the Federal District Court for the Middle District of Pennsylvania; Plaintiff's must file their response with the Court on or before 7/1/2019; this Order to Show Cause will be decided without oral argument; Plaintiff's motions for subpoena and injunction and entry of default and Plaintiff William Kaetz's proposed Order for default judgment are Administratively Terminated without prejudice; plaintiffs are advised that the termination of these motions/submissions is not an adjudication on the merits at this time; the Clerk of the Court shall serve a copy of this Order upon Plaintiff's via regular mail. Signed by Judge Claire C. Cecchi on 5/31/2019. **(Pa33 – Pa35)**

## STATEMENT OF FACTS RELEVANT TO THE UNITED STATES DISTRICT COURT OF NEW JERSEY BEING PROPER VENUE

1.      This case is a 42 U.S.C. § 1983 Civil Rights complaint under diversity jurisdiction, **(Pa3 – Pa10)** (the court changed plaintiffs' filing to federal question jurisdiction **(Pa1-Pa2)**), for violations of state and federal due process and double jeopardy rights. **(Pa3 – Pa10)**

2.      At the time of the violations of state and federal due process and double jeopardy rights both Plaintiffs' place of abode was, and still is, the State of New Jersey and within the venue of United States District Court of New Jersey.

3.      The plaintiffs' claim arose on September 7, 2018 in the township of New Milford New Jersey. Plaintiff Catherine Kaetz was arrested in the State of New Jersey by the New Milford New Jersey Law Enforcement during an alleged traffic stop. **(Pa41)** An underlying out of state warrant that classified Plaintiff Catherine Kaetz a fugitive from justice activated the law enforcement of NJ to activate a hot pursuit and arrest with a threat of deadly force upon Catherine Kaetz. The alleged warrant was from a Pennsylvania temporary PFA (protection from abuse) complaint of 1/28/2018 **(Pa36)** that produced the PFA Warrant of 1/29/2018 **(Pa37)** from a municipal court that was resolved and superseded by the PFA Final Order of 2/5/2018 **(Pa38 – Pa40)** from the superior Monroe County Court that was signed by the PFA Judge, the PFA Plaintiff and the PFA Defendant, the matter of the warrant was adjudicated in the Monroe County Courthouse PA on 2/5/2018.

4.      Plaintiff Catherine Kaetz was taken from the New Milford NJ Police holding jail cell to the Bergen County Jail at 160 S River St, Hackensack, NJ 07601 where she was imprisoned for twelve (12) days for the alleged warrant that was resolved on 2/5/2018. This is evidenced with the Inmate Look up Bergen County Jail (**Pa42**), Extradition Waiver of 9/13/2018 (**Pa43**), and the Extradition Order of 9/13/2018 (**Pa44**).

5.      September 19, 2018, twelve (12) days after her arrest, Catherine Kaetz was taken from the Bergen County Jail in the State of New Jersey across state lines to the State of Pennsylvania to the #43-4-01 Municipal District Court in Monroe County PA. in front of Magisterial District Judge Brian Germano, (same Judge that claimed no jurisdiction over PFAs) where the alleged warrant came from, and was released from bondage, evidenced with the PA Bail Bond Order of 9/19/2018 (**Pa45**).

6.      A substantial amount of the underlying events of this cause of action arose geographically in the State of New Jersey, the violations of state and federal due process and double jeopardy rights and false imprisonment occurred in the State New Jersey. The relevant victims live in the State of New Jersey, and, property relevant to this case is located in the State of New Jersey, all under the venue of the United States District Court of New Jersey.

**7.**     The administrative negligence and court errors that caused violations of state and federal due process and double jeopardy rights by the defendant, the Court of Common Pleas of Monroe County, that is encompassed by the venue of the United States District Court for the Middle District of Pennsylvania, reached into the venue of the United States District Court of New Jersey, and, as the same as a foreign corporation or a foreign state, defendant does business in the state of New Jersey under the venue of the United States District Court of New Jersey, and, proper venue is where the tort happened, the torts happened in New Jersey, the defendant and it's tort actions fall within the venue and jurisdiction of the United States District Court of New Jersey. NJ State Law also applies.

**8.**     In New Jersey: from Crepy v. Benckiser, Law Div.-Essex Cnty. (Mitterhoff, J.S.C.), DOCKET NO.: ESX-L-730-15, February 19, 2016:

> "Proper venue in a civil action is governed by R. 4:3-2, which provides, in pertinent part, that "venue shall be laid in the county in which the cause of action arose, or in which any party to the action resides at the time of its commencement." R. 4:3-2(a)(3)."

## DISCUSSION

**1.     Venue Rules -** 28 USC 1391 **(Pa46 – Pa48)** provides federal court system's basic venue rules. According to 1391, venue is appropriate in a federal court:

- based on where the defendants reside;

- based on where the underlying events occurred or relevant property is located;

- or in the unusual circumstance where neither of the above two methods will work, wherever a defendant is subject to personal jurisdiction.

According to 28 USC 1391(b)(2), venue is appropriate in a judicial district where there occurred a "substantial number of events or omissions" from which the case arose.

For example, if a tort occurred in Manhattan, then venue would be appropriate in the Southern District of New York. Of course, in some cases a substantial number of events related to the case could occur in multiple locations, making venue appropriate in more than one judicial district.

In almost all cases, appropriate venue is based on either defendant's residency or where a substantial number of the underlying events occurred.

If not, USC 28 1391(b)(3) provides that if neither (b)(1) nor (b)(2) provides with appropriate venue, then venue is appropriate wherever there is personal jurisdiction over the defendant. Almost always (b)(1) or b(2) will work and parties will not need to rely on 28 USC 1391(b)(3).

USC 28 1391(c) makes a foreign corporation suable anywhere that it does business, the corporation is considered a resident of that district for venue purposes. A corporation is a resident of the divisions where it does business.

USC 28 1391 (f)Civil Actions Against a Foreign State. A civil action against a foreign state as defined in section 1603(a) of this title may be brought;

(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

## 2. Transfer Statutes

28 USC 1404 provides: **(Pa49)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ."

Venue often will be appropriate in more than one federal court. If a plaintiff chooses one court, there may be other courts where venue is also suitable. 1404 tells us when a court should transfer the case.

A party may ask the court to transfer the case to another forum "for convenience" or "in the interest of justice."

28 USC 1404 Factors - Courts apply a number of factors to determine whether

convenience or justice favor transferring the case to another federal district. Courts divide these factors into "private" and "public" factors. Factors that courts consider include the following:

Private Factors

1. ease of access to evidence;

2. availability of compulsory process to cause witnesses to participate in the case;

3. cost for willing witnesses to participate; and

4. other practical considerations that would make a trial easy, speedy, and inexpensive.

Public Factors

1. administrative difficulties resulting from court congestion;

2. local interest in having the case decided in the original forum;

3. familiarity of the forum with the law that governs the case; and

4. avoidance of difficulties in conflicts of law or the application of foreign law.

**Applicable Law**

Usually a federal court will apply the choice of law provisions of the state in which they sit. That is, a federal court in New York will engage in the same analysis as a state court in New York to determine which law should apply to a case.

In New Jersey: from Crepy v. Benckiser, Law Div.-Essex Cnty. (Mitterhoff, J.S.C.), DOCKET NO.: ESX-L-730-15, February 19, 2016:

"Proper venue in a civil action is governed by R. 4:3-2, which

provides, in pertinent part, that "venue shall be laid in the county in

which the cause of action arose, or in which any party to the action

resides at the time of its commencement." R. 4:3-2(a)(3)."

## 28 USC 1406: (Pa50)

Rule 12 (3)(b) of the Federal Rules of Civil Procedure provides that if venue

is improper, a party may move to dismiss the case. If venue is not appropriate

pursuant to 28 USC 1391, the district court can terminate the case and the plaintiff

will have to file the case elsewhere.

28 USC 1406 provides the district court with the discretion to transfer the case

to an appropriate federal court instead of dismissing the case.

One major difference between 28 USC 1404 and 1406 is that because the

plaintiff filed the case in an improper venue, the transferee court will not apply the

law of the transferor court.

## 28 USC 1631: (Pa51)

28 USC 1631 enables federal courts to transfer a case where the court lacks

jurisdiction, to a federal court that has jurisdiction.

Most courts interpret "jurisdiction" to mean both subject matter jurisdiction

and personal jurisdiction. As with 1406, the transferee court will not apply the law

of the transferor court. The court will treat the case as if it were first filed in the transferee's district and had never been filed in the transferor court.

## ARGUMENT

## UNITED STATE DISTRICT COURT OF NEW JERSEY IS THE PROPER VENUE FOR THIS CASE BECAUSE OF THE FOLLOWING FACTS:

1.      According to 28 USC 1391(b)(2), venue is appropriate in a judicial district where there occurred a "substantial number of events or omissions" from which the case arose. Substantial number of events from which this case arose happened in the State of New Jersey in the venue of the United State District Court of New Jersey. This case is in its proper venue in New Jersey.

2.      According to USC 28 1391(c) makes a foreign corporation suable anywhere that it does business, the corporation is considered a resident of that district for venue purposes. A corporation is a resident of the divisions where it does business. The Defendant does business the State of New Jersey in the venue of the United State District Court of New Jersey. This case is in its proper venue in New Jersey.

3.      USC 28 1391 (f)Civil Actions Against a Foreign State. A civil action against a foreign state as defined in section 1603(a) of this title may be brought;

(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

Substantial number of events and property from which this case arose happened in the State of New Jersey in the venue of the United State District Court of New Jersey. This case is in its proper venue in New Jersey.

4.    Convenience or justice does not favor transferring the case to another federal district. The Middle District of Pennsylvania Courthouse is located in Philadelphia PA, a 2-hour drive for parties. A considerable distance geographically for both parties to travel compared to the Distance to the United State District Court of New Jersey in Newark NJ.

5.    Plaintiffs must manually file prose and are discriminated already because they cannot file electronically, only by mail or hand delivery. Mail gets lost or takes over a week to get logged into the docket of the case whereas the defendant can instantly file at any time day or night. With the NJ Court within a reasonable 30-minute drive for the plaintiffs and under an hour for defendant and witnesses, **keeping the venue in NJ satisfies the private factors to keep the venue of this case in the NJ District Court because of: 1**. ease of access to evidence; **2**. availability of compulsory process to cause witnesses to participate in the case; **3**. cost for willing witnesses to participate; **4**. other practical considerations that would make a trial easy, speedy, and inexpensive. **5**. Transferring the case will cause financial hardship upon plaintiffs and witnesses.

**6.**     Public Factors - **1**. administrative difficulties resulting from court congestion; The Middle District of Pennsylvania Courthouse in Philadelphia PA, is most likely congested with cases like the United State District Court of New Jersey in Newark NJ., and PA is a bigger state, transferring the case will no doubt cause hardship and confusion and delay of justice. **2.** Local interest in having the case decided in the original forum; How NJ handles this case is important because Monroe County is known to be corrupt, God only knows how many people have been railroaded into jail with Monroe County's disrespect for individual's rights.   NJ has failed to investigate the authenticity of out of state warrant, yet, criminal illegal immigrants are given sanctuary without question? That is an attack and discrimination on American Citizens, and abuse of office and public trust. A bleep on a computer screen for an alleged warrant and all Constitutional Rights are void? I could not find a Constitutional law anywhere that supports that. Certain precedence need to be made to protect Constitutional Rights from abuse of the out of state warrant system before they happen, better checks and balances need to be implemented and this case may just do that. **3.** Familiarity of the forum with the law that governs the case; This is a civil rights case; the forum is the same in all US District Courts, changing venue will only delay justice and confuse the case. **4**. Avoidance of difficulties in conflicts of law or the application of foreign law – Pennsylvania has its own laws that may cause difficulties and conflicts of law that can cause confusion and delay of justice.

7.      New Jersey State laws support venue in New Jersey: from Crepy v. Benckiser,

Law  Div.-Essex  Cnty.  (Mitterhoff,  J.S.C.),  DOCKET  NO.:  ESX-L-730-15,

February 19, 2016:

> "Proper venue in a civil action is governed by R. 4:3-2, which provides,
>
> in pertinent part, that "venue shall be laid in the county in which the
>
> cause of action arose, or in which any party to the action resides at the
>
> time of its commencement." R. 4:3-2(a)(3)."

## CONCLUSION

1.      A substantial amount of the underlying events of this cause of action arose

geographically in the State of New Jersey, the violations of state and federal due

process and double jeopardy rights and false imprisonment occurred in the State

New Jersey. The relevant victims live in the State of New Jersey, and, property

relevant to this case is located in the State of New Jersey, all under the venue and

jurisdiction of the United States District Court of New Jersey. New Jersey State

Laws also support venue to be in New Jersey.

2.      The administrative negligence and court errors that caused violations of state

and federal due process and double jeopardy rights by the defendant, the Court of

Common Pleas of Monroe County, that is encompassed by the venue of the United

States District Court for the Middle District of Pennsylvania, reached into the venue

of the United States District Court of New Jersey, and, as the same as a foreign

corporation or foreign state, defendant does business in the state of New Jersey under the venue of the United States District Court of New Jersey, and, proper venue is where the tort happened, the torts happened in New Jersey, the defendant and it's tort actions fall within the venue of the United States District Court of New Jersey.

3.      28 USC 1391(b)(2), (c), and (f)(1) and the Texas Law Review 392 (**Pa52 – Pa82)** and New Jersey State Law support the United States District Court of New Jersey having venue and jurisdiction over the defendant.

4.      The United State District Court of New Jersey in Newark NJ is the proper venue of this case, for the all the above reasons this case should not be transferred to the United States Middle District of Pennsylvania Philadelphia PA.

5.      Relief sought is to keep the case in The United State District Court of New Jersey in Newark NJ, and a default judgement with compensation sought against the defendant is in order, and any other relief and compensation this court deems proper.

William Kaetz        6/22/2019          Catherine Kaetz        6/22/19
Plaintiff                                          Plaintiff

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
    Plaintiffs

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
    Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ                         Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
Plaintiffs

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

## APPENDIX TO PLAINTIFFS' ANSWER TO THE ORDER OF MAY 31, 2019 TO SHOW CAUSE WHY THIS MATTER SHALL NOT BE TRANSFERRED TO THE FEDERAL DISTRICT COURT ENCOMPASSING THE COURT OF COMMON PLEAS OF MONROE COUNTY, THE FEDERAL DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

# TABLE OF APPENDIX

Docket Sheet ……….……………………………………..……………… **Pa1 – Pa2**

Original Complaint ………………………………………..……..……… **Pa3 – Pa10**

Motion for Court Order to Subpoena Records and for an Injunction….**Pa11 – Pa17**

Certificate of service ……………………………………………...….….**Pa18 – Pa21**

Motion for Default Judgement ………………………………………..**Pa22 – Pa28**

Plaintiffs' proposed order…………………………………...…………**Pa29 – Pa32**

Order of 5/31/2019………...…………………………...……....……**Pa33 – Pa35**

PFA Complaint of 1/28/2018………………………………………...……….**Pa36**

PFA Warrant of 1/29/2018………………………………………………...….**Pa37**

PFA Final Order of 2/5/2018 …….….……………………………………**Pa38 – Pa40**

New Milford NJ Arrest Record of 9/7/2018……….…………………………...…**Pa41**

Inmate Look up Bergen County Jail …………………………………………...…**Pa42**

Extradition Waiver of 9/13/2018 ………....…...….…………………..………**Pa43**

Extradition Order of 9/13/2018 ………....….…..……………………….…..…**Pa44**

PA Bail Bond Order of 9/19/2018 ……....…...….………………….…...….…**Pa45**

28 U.S. Code § 1391 …..………………………………………………**Pa46 – Pa48**

28 U.S. Code § 1404 ………………………………………………………...…**Pa49**

28 U.S. Code § 1406 …………………………………………………….…...…**Pa50**

28 U.S. Code § 1631 ……………………………………………………….…...…**Pa51**

Diane P. Wood "Federal Venue: Locating the Place Where the Claim Arose,"

54 Texas Law Review 392 (1976) . ……….…………………….……**Pa52 – Pa82**

# U.S. District Court
# District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:18-cv-14782-CCC-JBC

KAETZ et al v. COURT OF COMMON PLEAS OF MONROE
COUNTY
Assigned to: Judge Claire C. Cecchi
Referred to: Magistrate Judge James B. Clark
Cause: 42:1983 Civil Rights Act

Date Filed: 10/09/2018
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**WILLIAM F. KAETZ**

represented by **WILLIAM F. KAETZ**
437 ABBOTT ROAD
PARAMUS, NJ 07652
201-753-1063
PRO SE

**Plaintiff**

**CATHERINE KAETZ**

represented by **CATHERINE KAETZ**
437 ABBOTT ROAD
PARAMUS, NJ 07652
201-753-1063
PRO SE

V.

**Defendant**

## COURT OF COMMON PLEAS OF
## MONROE COUNTY
*FORTY-THIRD JUDICIAL DISTRICT OF
COMMONWEALTH PENNSYLVANIA*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/09/2018 | 1 | COMPLAINT against COURT OF COMMON PLEAS OF MONROE COUNTY ( Filing and Admin fee $ 400 receipt number NEW037639) with JURY DEMAND, filed by WILLIAM F. KAETZ, CATHERINE KAETZ. (Attachments: # 1 Civil Cover Sheet)(ys, ) Modified on 11/8/2018 (th). (Entered: 10/12/2018) |
| 10/09/2018 | 2 | MOTION for Court Order to Subpoena Records and for an Injunction by WILLIAM F. KAETZ, CATHERINE KAETZ. (ys, ) Modified on 11/8/2018 (th). (Entered: 10/12/2018) |
| 10/12/2018 | | Set Deadlines as to 2 MOTION for Permanent Injunction. Motion set for 11/5/2018 before Judge Claire C. Cecchi. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk's Office and does not supersede any previous or subsequent orders from the Court. (ys, ) (Entered: 10/12/2018) |
| 10/12/2018 | 3 | SUMMONS ISSUED as to COURT OF COMMON PLEAS OF MONROE COUNTY. Attached |

| | | is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (ys, ) (Entered: 10/12/2018) |
|---|---|---|
| 10/29/2018 | 4 | CERTIFICATE OF SERVICE by CATHERINE KAETZ, WILLIAM F. KAETZ (sm) (Entered: 10/30/2018) |
| 02/05/2019 | 5 | MOTION for Entry of Default by CATHERINE KAETZ, WILLIAM F. KAETZ. (Attachments: # 1 Affidavit Catherine Kaetz, # 2 Affidavit William F. Kaetz, # 3 Certificate of Service, # 4 Entry of Default, # 5 Envelope)(sm) (Entered: 02/05/2019) |
| 02/05/2019 | | Set Deadlines as to 5 MOTION for Entry of Default. Motion set for 3/4/2019 before Judge Claire C. Cecchi. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (sm) (Entered: 02/05/2019) |
| 05/13/2019 | 6 | Proposed Order for default from William Kaetz. (Attachments: # 1 Certificate of Service)(sm) (Entered: 05/16/2019) |
| 05/31/2019 | 7 | ORDER that Plaintiffs will show cause in writing why this matter shall not be transferred to the Federal District Court encompassing the Court of Common Pleas of Monroe County, the Federal District Court for the Middle District of Pennsylvania; Plaintiff's must file their response with the Court on or before 7/1/2019; this Order to Show Cause will be decided without oral argument; Plaintiff's motions for subpoena and injunction and entry of default {2] and 5 and Plaintiff William Kaetz's proposed Order for default judgment 6 are Administratively Terminated without prejudice; plaintiffs are advised that the termination of these motions/submissions is not an adjudication on the merits at this time; the Clerk of the Court shall serve a copy of this Order upon Plaintiff's via regular mail. Signed by Judge Claire C. Cecchi on 5/31/2019. (sm) (Entered: 05/31/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/18/2019 20:54:29 | | |
| **PACER Login:** ka0761:2924690:0 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 2:18-cv-14782-CCC-JBC Start date: 1/1/1970 End date: 6/18/2019 |
| **Billable Pages:** 2 | **Cost:** | 0.20 |

**Pa2**

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

RECEIVED

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

OCT 0 9 2018

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| William F. Kaetz<br>Catherine S. Kaetz | Monroe County Courthouse PA<br>AT 8:30_____M<br>WILLIAM T. WALSH, CLERK |
| **(b)** County of Residence of First Listed Plaintiff    USA Bergen NJ<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant    USA Monroe PA<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>Prose William Kaetz and Catherine Kaetz<br>437 Abbott Road Paramus NJ 07652<br>2017531063 | Attorneys *(If Known)*<br>District Attorney E. David Christine, Jr.<br>610 Monroe Street, Suite 126<br>Stroudsburg, Pennsylvania 18360 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

☐ 2  U.S. Government
Defendant

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>& Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>Student Loans<br>(Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>Liability<br>☐ 320 Assault, Libel &<br>Slander<br>☐ 330 Federal Employers'<br>Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>Product Liability<br>☐ 360 Other Personal<br>Injury<br>☐ 362 Personal Injury -<br>Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>Product Liability<br>☐ 367 Health Care/<br>Pharmaceutical<br>Personal Injury<br>Product Liability<br>☐ 368 Asbestos Personal<br>Injury Product<br>Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>Property Damage<br>☐ 385 Property Damage<br>Product Liability | ☐ 625 Drug Related Seizure<br>of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>Accommodations<br>☐ 445 Amer. w/Disabilities -<br>Employment<br>☐ 446 Amer. w/Disabilities -<br>Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>Conditions of<br>Confinement | **LABOR**<br>☐ 710 Fair Labor Standards<br>Act<br>☐ 720 Labor/Management<br>Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>or Defendant)<br>☐ 871 IRS—Third Party<br>26 USC 7609 | ☐ 850 Securities/Commodities/<br>Exchange<br>☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>Act/Review or Appeal of<br>Agency Decision<br>☐ 950 Constitutionality of<br>State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983
Brief description of cause:
Violation of state and federal due process and double jeopardy rights

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER RULE 23, F.R.Cv.P. | DEMAND $<br>240,000.00 | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

## VIII. RELATED CASE(S)
IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
10/09/2018

SIGNATURE OF ATTORNEY OF RECORD
X [signature] CATHERINE KAETZ     X [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Pa3

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
        Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ                    Case No.: _____
CATHERINE KAETZ
Plaintiffs

vs.                        **CIVIL COMPLAINT — JURY TRIAL DEMANDED**

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

## 42 U.S.C. § 1983 COMPLAINT, VIOLATION OF STATE AND FEDERAL DUE PROCESS AND DOUBLE JEOPARDY RIGHTS

PLEASE TAKE NOTICE that on October 8, 2018, plaintiffs William
and Catherine Kaetz, pro se, files this **42 U.S.C. § 1983** civil
complaint in the United States District Court District of New
Jersey against defendant, the Court of Common Pleas of Monroe
County Forty-Third Judicial District Commonwealth of Pennsylvania,
specifically for violations of state and federal due process and
double jeopardy rights for the following reasons:

**1.** A declaratory decree was violated and declaratory relief was
unavailable.

**2.** William Kaetz is Catherine Kaetz's father and is a witness in a court case hearing Catherine was defendant in.

**3.** William Kaetz intervened in the case to collect evidence to prove his daughter's innocence in a legal issue, a Pennsylvania protection from abuse (PFA) case, *SEAN ANTHONY FOSTER vs CATHERINE STEPHANIE KAETZ, docket no.31 DR 2018/340 CV 2018.*

**4.** In a nut shell there are violations of Catherine Kaetz's Constitutional Rights, specifically the Due Process and Double Jeopardy clauses of the US, NJ, and PA Constitutions because Catherine Kaetz faced the Court of Common Pleas in front of Judge David J. Williamson, J. on all matters of the PFA case, 8 months later PA wants a second bite at Catherine, she was falsely imprisoned for PFA matters she faced the judge about and the matters were resolved by his Final Order. This is a second time the PA court wants Catherine to face the same offenses. Transcripts of that hearing will prove her innocence and that all matters were brought to the judge's attention. William Kaetz filed a motion to the Court of Common Pleas for transcripts, then after inspecting them, the court failed to produce the entire hearing transcripts and we believe the Court of Common Pleas is covering up their mistakes. A second motion for the full transcripts was filed, no answer as of the date of this complaint.

Pa5

## BRIEF CASE HISTORY OF THE PA PFA CASE

**1.** A temporary PFA order was created January 22, 2018 by Sean Anthony Foster against Catherine Kaetz.

**2.** A PFA violation happened January 28, 2018 by Catherine via a phone message that was not threatening to Sean, however it is a violation of the temporary order, Sean filed a complaint in a PA Magisterial District Court #43-4-01.

**3.** A warrant for arrest was created January 29, 2018 for Catherine.

**4. A final hearing happened on February 5th 2018** in front of Judge, David J. Williamson, J. in the Court of Common Pleas of Monroe County Forty-Third Judicial District Commonwealth of Pennsylvania and the complaint and warrant of January 29, 2018 was brought to the Judge's attention.

**5.** At the hearing we went in the courtroom, things were said, there was a break in the proceedings, then it continued. The first part of the hearing is not in the transcripts, only the second part of the hearing is transcribed.

**6.** Whether the court judge did not want to deal with the warrant at that time is irrelevant, we were there, all matters were bought out and ripe for judgement and his judgement was to reenact the hearing and manipulate court records and do nothing about the

warrant and issued a new final PFA order that supersedes the temporary order, so be it.

**7.**   **After things were said and done,** the Judge issued a standard final PFA order on the matter and Catherine has been compliant.

**8.**   The contempt charges and warrant in the lower court were supposed to be resolved, superseded by the Higher Courts Final Order, Catherine faced the judge on all matters.

**9.**   On September 7, 2018, approximately 8 months later, Catherine was arrested because of this PA warrant in the state of NJ at a traffic stop (she lives in NJ now) and imprisoned for 12 days and transported to PA then released on an unsecured bail. The warrant was left active and/or reactivated in the lower PA District Court, the higher PA Common Pleas Court had no information about an active warrant upon Catherine.

**10.**   The arrest of Catherine Kaetz and the ongoing matters in the PA Courts violate Catherine Kaetz's rights, the Due Process and Double Jeopardy clauses of the US, NJ, and PA Constitutions.

---

#### THERE IS NEGLIGENCE AND COURT ERRORS

---

**1.**   On September 13, 2018, The William Kaetz, pro se and a witness at the PFA hearing of February 5th, filed a motion in the Court of Common Pleas of Monroe County PA for an expedited transcript of the PFA hearing of February 5th, 2018 pursuant to PA local rule 4007

because the transcripts will prove Catherine faced the charges in court already.

**2.** On September 13,2018, William Kaetz went to the original court, #43-4-01 District Court, spoke with Magisterial District Judge Brian Germano, he claimed signing the warrant after hours and he has no jurisdiction after 8:30 am the next day because it's a PFA case and the warrant goes to the Court of Common Pleas that has jurisdiction.

**3.** On September 13,2018, William Kaetz went to the Court of Common Pleas Monroe County, all departments there had no record of an active warrant upon Catherine Kaetz.

**4.** The PA higher and lower courts failed to communicate with each other and failed to remove the warrant and complaint. Pa claims a Unified Judicial System on their website; it is false advertisement.

**5.** The Charging Officer Thomas Whalen that alleged calling Catherine about this warrant failed to do a proper investigation and failed to look at The Court of Common Pleas court records.

**6.** September 19, 2018, Catherine Kaetz was taken from NJ to PA to Judge Brian Germano, the Judge that signed the warrant then claimed no jurisdiction.

**7.** The transcript will prove Catherine physically stood in the PA County Courthouse and faced the judge about this violation and warrant and that Catherine believed the violation and warrant to

Pa8

have been resolved by the PA court because of the outcome of the PA PFA court hearing of February 5th 2018.

**8.** Transcripts were ordered and a hearing was to be scheduled and Catherine will appear in the PA court to clear up this matter.

**9.** September 27, 2018, defendant Court of Common Pleas of Monroe County sent a transcript to plaintiffs that is incomplete.

**10.** The transcripts that were sent by the PA court does not have the entire hearing.

**11.** Plaintiffs, William Kaetz, and Catherine Kaetz, as well as others were there at the hearing that can testify there is more to the hearing than what is in the transcripts sent.

**12.** There are inconsistencies in the Pennsylvania Court System and how they handled this case that brings up red flags and now the failure to produce the entire hearing transcripts could be a cover up, this is why this complaint is being filed.

**13.** In the case *One Lot Emerald Cut Stones v. United States, 409 U.S. 232 (1972)*, the Supreme Court held, "the Double Jeopardy Clause prohibits punishing twice, or attempting a second time to punish criminally, for the same offense." This is a second time the PA court wants Catherine to face the same offenses she faced on February 5th 2018, their actions are unconstitutional and violates Catherine's Due Process and Double Jeopardy rights.

Pa9

## RELIEF REQUESTED

**14.** Relief requested is for a FEDERAL COURT ORDER to ORDER the Court of Common Pleas of Monroe County Forty-Third Judicial District Commonwealth of Pennsylvania, to produce transcripts and an audio copy and a video copy of the whole entire protection from abuse hearing of February 5th, 2018, the whole day in that courtroom, and all transcripts and video and audio of all other hearings relating to PA docket no.31 DR 2018/340 CV 2018, the FOSTER VS KAETZ case.

**15.** Other relief requested is compensation for false imprisonment of Catherine Kaetz at a rate of $20,000.00 per day for 12 days totaling $240,000.00 and anything else this court deems just.

## CERIFICATION

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WILLIAM F KAETZ
437 Abbott Road
Paramus NJ 07652
201 753 1063
Plaintiff

CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201 753 1063
Plaintiff

October 9, 2018

**Pa10**

# RECEIVED

**OCT 0 9 2018**

WILLIAM F KAETZ
CATHERINE S. KAETZ
437 Abbott Road
Paramus NJ 07652
201 753 1063
        Plaintiffs

AT 8:30_____M
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ            Case No.: _____
CATHERINE KAETZ
Plaintiffs

vs.                        **MOTION FOR COURT ORDER
                           TO SUBPOENA RECORDS AND
                           FOR AN INJUNCTION**

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
Defendant

---

**MOTION FOR A FEDERAL COURT ORDER TO HAVE THE DEFENDANT, THE COURT
OF COMMON PLEAS OF MONROE COUNTY FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA, PRODUCE TRANSCRIPTS AND AN AUDIO
COPY AND A VIDEO COPY OF ALL PROTECTION FROM ABUSE HEARINGS OF
CATHERINE KAETZ. MOTION FOR AN INJUNCTION TO RESTRAINT DEFENDANT
FROM PROSECUTING THE PFA UNTIL THIS FEDERAL COMPLAINT IS RESOLVED.**

---

PLEASE TAKE NOTICE that on October 8, 2018, plaintiffs William

and Catherine Kaetz, pro se, files this Motion in the United States

District Court District of New Jersey to be heard on November 5,

2018, for a Court Order to subpoena the defendant, the Court of

Common Pleas of Monroe County Pennsylvania, to produce transcripts

and audio and video of all protection from abuse hearings relating

to PA docket no.31 DR 2018/340 CV 2018, the Foster vs Kaetz case

in their entirety and for injunctional relief to restrain defendant

from prosecuting the PFA violation until this federal complaint is
resolved for the following reasons:

**1.** A declaratory decree was violated and declaratory relief was
unavailable.

**2.** William Kaetz is Catherine Kaetz's father and is a witness in
a court case hearing Catherine was defendant in.

**3.** William Kaetz intervened in the case to collect evidence to
prove his daughter's innocence in a legal issue, a Pennsylvania
protection from abuse (PFA) case, *SEAN ANTHONY FOSTER vs CATHERINE
STEPHANIE KAETZ, docket no.31 DR 2018/340 CV 2018*.

**4.** In a nut shell there are violations of Catherine Kaetz's
Constitutional Rights, specifically the Due Process and Double
Jeopardy clauses of the US, NJ, and PA Constitutions because
Catherine Kaetz faced the Court of Common Pleas in front of Judge
David J. Williamson, J. on all matters of the PFA case, 8 months
later PA wants a second bite at Catherine, she was falsely
imprisoned for PFA matters she faced the judge about and the
matters were resolved by his Final Order. This is a second time
the PA court wants Catherine to face the same offenses. Transcripts
of that hearing will prove her innocence and that all matters were
brought to the judge's attention. William Kaetz filed a motion to
the Court of Common Pleas for transcripts, then after inspecting
them, the court failed to produce the entire hearing transcripts
and we believe the Court of Common Pleas is covering up their

mistakes. A second motion for the full transcripts was filed, no
answer as of the date of this complaint.

---

## BRIEF CASE HISTORY OF THE PA PFA CASE

---

1.   A temporary PFA order was created January 22, 2018 by Sean
Anthony Foster against Catherine Kaetz.

2.   A PFA violation happened January 28, 2018 by Catherine via a
phone message that was not threatening to Sean, however it is a
violation of the temporary order, Sean filed a complaint in a PA
Magisterial District Court #43-4-01.

3.   A warrant for arrest was created January 29, 2018 for
Catherine.

4.   **A final hearing happened on February 5th 2018** in front of
Judge, David J. Williamson, J. in the Court of Common Pleas of
Monroe County Forty-Third Judicial District Commonwealth of
Pennsylvania and the complaint and warrant of January 29, 2018 was
brought to the Judge's attention.

5.   At the hearing we went in the courtroom, things were said,
there was a break in the proceedings, then it continued. The first
part of the hearing is not in the transcripts, only the second
part of the hearing is transcribed.

6.   Whether the court judge did not want to deal with the warrant
at that time is irrelevant, we were there, all matters were bought
out and ripe for judgement and his judgement was to reenact the

hearing and manipulate court records and do nothing about the warrant and issued a new final PFA order that supersedes the temporary order, so be it.

**7.    After things were said and done**, the Judge issued a standard final PFA order on the matter and Catherine has been compliant.

**8.**    The contempt charges and warrant in the lower court were supposed to be resolved, superseded by the Higher Courts Final Order, Catherine faced the judge on all matters.

**9.**    On September 7, 2018, approximately 8 months later, Catherine was arrested because of this PA warrant in the state of NJ at a traffic stop (she lives in NJ now) and imprisoned for 12 days and transported to PA then released on an unsecured bail. The warrant was left active and/or reactivated in the lower PA District Court, the higher PA Common Pleas Court had no information about an active warrant upon Catherine.

**10.**    The arrest of Catherine Kaetz and the ongoing matters in the PA Courts violate Catherine Kaetz's rights, the Due Process and Double Jeopardy clauses of the US, NJ, and PA Constitutions.

---

### THERE IS NEGLIGENCE AND COURT ERRORS

---

**1.**    On September 13,2018, The William Kaetz, pro se and a witness at the PFA hearing of February 5th, filed a motion in the Court of Common Pleas of Monroe County PA for an expedited transcript of the PFA hearing of February 5th,2018 pursuant to PA local rule 4007

because the transcripts will prove Catherine faced the charges in court already.

**2.** On September 13,2018, William Kaetz went to the original court, #43-4-01 District Court, spoke with Magisterial District Judge Brian Germano, he claimed signing the warrant after hours and he has no jurisdiction after 8:30 am the next day because it's a PFA case and the warrant goes to the Court of Common Pleas that has jurisdiction.

**3.** On September 13,2018, William Kaetz went to the Court of Common Pleas Monroe County, all departments there had no record of an active warrant upon Catherine Kaetz.

**4.** The PA higher and lower courts failed to communicate with each other and failed to remove the warrant and complaint. Pa claims a Unified Judicial System on their website; it is false advertisement.

**5.** The Charging Officer Thomas Whalen that alleged calling Catherine about this warrant failed to do a proper investigation and failed to look at The Court of Common Pleas court records.

**6.** September 19, 2018, Catherine Kaetz was taken from NJ to PA to Judge Brian Germano, the Judge that signed the warrant then claimed no jurisdiction.

**7.** The transcript will prove Catherine physically stood in the PA County Courthouse and faced the judge about this violation and warrant and that Catherine believed the violation and warrant to

**Pa15**

have been resolved by the PA court because of the outcome of the PA PFA court hearing of February 5th 2018.

**8.** Transcripts were ordered and a hearing was to be scheduled and Catherine will appear in the PA court to clear up this matter.

**9.** September 27, 2018, defendant Court of Common Pleas of Monroe County sent a transcript to plaintiffs that is incomplete.

**10.** The transcripts that were sent by the PA court does not have the entire hearing.

**11.** Plaintiffs, William Kaetz, and Catherine Kaetz, as well as others were there at the hearing that can testify there is more to the hearing than what is in the transcripts sent.

**12.** There are inconsistencies in the Pennsylvania Court System and how they handled this case that brings up red flags and now the failure to produce the entire hearing transcripts could be a cover up, this is why this complaint is being filed.

**13.** In the case *One Lot Emerald Cut Stones v. United States, 409 U.S. 232 (1972)*, the Supreme Court held, "the Double Jeopardy Clause prohibits punishing twice, or attempting a second time to punish criminally, for the same offense." This is a second time the PA court wants Catherine to face the same offenses she faced on February 5th 2018, their actions are unconstitutional and violates Catherine's Due Process and Double Jeopardy rights.

Pa16

## RELIEF REQUESTED

**14.** Relief requested is for a FEDERAL COURT ORDER to ORDER the Court of Common Pleas of Monroe County Forty-Third Judicial District Commonwealth of Pennsylvania, to produce transcripts and an audio copy and a video copy of the whole entire protection from abuse hearing of February 5th, 2018, the whole day in that courtroom, and all transcripts and video and audio of all other hearings relating to PA docket no.31 DR 2018/340 CV 2018, the FOSTER VS KAETZ case.

**15.** Other relief requested is for injunctional relief to restrain defendant from prosecuting the PFA violation until this federal complaint is resolved and anything else this court deems just.

## CERIFICATION

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WILLIAM F KAETZ
437 Abbott Road
Paramus NJ 07652
201 753 1063
Plaintiff

CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201 753 1063
Plaintiff

October 9, 2018

**Pa17**

          Plaintiffs

AT 8:30  ━ ┼ ┼ ┼ M
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ                    Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
Plaintiffs

vs.                                        **CERTIFICATE OF SERVICE**

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

---

### CERTIFICATE OF SERVICE

     I, WILLIAM F. KAETZ, hereby certify that on October 22,2018
BY USPS Priority Express Mail, that was tracked and delivered on
October 23, 2018 at 9:06 am, I served a copy of:

**1.** PLAINTIFFS' CIVIL SUMMONS
**2.** COPY OF COMPLAINT
**3.** NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS
**4.** 2 EACH WAIVER OF SERVICE OF SUMMONS FORMS
**5.** MOTION TO SUBPOENA RECORDS AND FOR AN INJUNCTION

to defendant's attorney:

     E. DAVID CHRISTINE JR.
     MONROE COUNTY PA DISTRICT ATTORNEY
     610 MONROE STREET SUITE 126
     STROUDSBURG PA 18360

**6.** Please see attached receipts of mailing and tracking delivery

☐ Served personally upon the defendant. Place where served: _____
_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

☐ Name of person with whom the summons and complaint were left:_____

☐ Returned unexecuted:_____
_____
_____

☒ Other (specify) : *USPS Priority Express Mail*
*Signature Required*
_____

---

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES 24.70 | TOTAL 24.70 |
|--------|----------------|-------------|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on    *10/23/2018*            *William Fitz*
                      Date                       Signature of Server

                                  *437 Abbott Rd*
                                  Address of Server

                              *Paramus NJ*
                                  *07652*

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE (201) 753-1063

WILLIAM KAETE
437 ABBott Rd
PARAMUS NJ 07652

**PAYMENT BY ACCOUNT** (if applicable)

USPS Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct No.

**DELIVERY OPTIONS** (Customer Use Only)

☒ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1)
Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4)
Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's
mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☒ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (570) 577-3052

E. DAVID CHRISTINE Jr.
DISTRICT ATTORNEY
610 MONROE ST., SUITE 126
STROUDSBURG PA

ZIP + 4® (U.S. ADDRESSES ONLY)

1 8 3 6 0

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

---

**PRIORITY MAIL EXPRESS™**

UNITED STATES POSTAL SERVICE®

EE 218940401 US

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | ☐ Military | ☐ DPO |
|---|---|---|---|
| 07652 | 10/22/18 | Postage $21.70 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 10/72/18 | ☐ 10:30 AM ☒ 3:00 PM ☐ 12 NOON | $ | $ |
| Time Accepted ☐ AM ☒ PM | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
| | $ | $ | $ |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ | $ 21.70 | |
| Weight ☒ Flat Rate | Acceptance Employee Initials | | |
| lbs. ozs. | | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |

LABEL 11-B, OCTOBER 2016     PSN 7690-02-000-9996     2-CUSTOMER COPY

# USPS Tracking®

**FAQs > (https://www.usps.com/faqs/uspstracking-faqs.htm)**

## Track Another Package ✛

**Tracking Number:** EE218940401US

Remove ✕

## Scheduled Delivery by

## TUESDAY

# 23 OCTOBER 2018 ⓘ

by
**3:00pm** ⓘ

## ✔ Delivered

October 23, 2018 at 9:06 am
Delivered
STROUDSBURG, PA 18360

Feedback

---

### Proof of Delivery                                     ︿

### ✔ Confirmation

Your Proof of Delivery record is complete and will be processed shortly.

Your confirmation will be sent to the following:

billkaetz@verizon.net

---

### Tracking History                                     ︿

**October 23, 2018, 9:06 am**
Delivered
STROUDSBURG, PA 18360
Your item was delivered at 9:06 am on October 23, 2018 in STROUDSBURG, PA 18360. The item was signed
for by M OLIVERA.

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
      Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

WILLIAM F KAETZ              Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
Plaintiffs

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

---

### MOTION FOR ENTRY OF DEFAULT

---

Plaintiffs William Kaetz and Catherine Kaetz request that the clerk
of court enter default against defendant Court of Common Pleas of
Monroe County, pursuant to Federal Rule of Civil Procedure 55(a).
In support of this request plaintiffs rely upon the record in this
case and the affidavit submitted herein.

Dated this 29TH day of JANUARY, 2019.


William Kaetz                   Catherine Kaetz

Plaintiff                        Plaintiff

**Pa22**

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
        Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ               Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
Plaintiffs

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

---
## ENTRY OF DEFAULT
---

Plaintiffs William Kaetz and Catherine Kaetz requests that

the clerk of court enter default against defendant, Court of Common

Pleas of Monroe County, pursuant to Federal Rule of Civil Procedure

55(a). It appearing from the record that defendant has failed to

appear, plead or otherwise defend, the default of Defendant, Court

of Common Pleas of Monroe County, is hereby entered pursuant to

Federal Rule of Civil Procedure 55(a).

Dated this _____ day of _____, 2019.

_____

Clerk of Court

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
        Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ                    Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
Plaintiffs

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

---

### AFFIDAVIT OF WILLIAM KAETZ, PLAINTIFF, IN SUPPORT OF
### MOTION FOR ENTRY OF DEFAULT

---

1. I, William F. Kaetz, being duly sworn, state as follows:

2. I am the plaintiff in the above-entitled action and I am familiar

   with the file, records and pleadings in this matter.

   3. The summons and complaint were filed on 10/12/2018.

4. Defendant was served with a copy of the summons and complaint

   on 10/23/2018, as reflected on the docket sheet by the proof of

   service filed on 10/29/2018.

5. An answer to the complaint was due on 11/13/2018.

**Pa24**

6. It has been 98 days, Defendant has failed to appear, plead or otherwise defend within the time allowed and, therefore, is now in default.

7. Plaintiff requests that the clerk of court enter default against the defendant.

8. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____     1/29/2019
William F. Kaetz                     Date

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
          Plaintiffs

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

WILLIAM F KAETZ                    Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
Plaintiffs

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

---

### AFFIDAVIT OF CATHERINE KAETZ, PLAINTIFF IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT

---

**1.** I, Catherine Kaetz, being duly sworn, state as follows:

**2.** I am the plaintiff in the above-entitled action and I am

   familiar with the file, records and pleadings in this matter.

**3.** The summons and complaint were filed on 10/12/2018.

**4.** Defendant was served with a copy of the summons and complaint

   on 10/23/2018, as reflected on the docket sheet by the proof

   of service filed on 10/29/2018.

**5.** An answer to the complaint was due on 11/13/2018.

**Pa26**

6. It has been 98 days, Defendant has failed to appear, plead or otherwise defend within the time allowed and, therefore, is now in default.

7. Plaintiff requests that the clerk of court enter default against the defendant.

8. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____          1/29/19
Catherine Kaetz                    Date

**Pa27**

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
        Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ                     Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
Plaintiffs

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115
570-517-3009
Defendant

## MOTION FOR DEFAULT CERTIFICATE OF SERVICE

Plaintiffs, WILLIAM F. KAETZ and CATHERINE KAETZ, hereby certify

that on January 29, 2019, I served a copy of Plaintiff's MOTION

FOR DEFAULT JUDGEMENT to defendant at the address stated below via

United States priority mail.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
District Attorney E. David Christine, Jr.
610 MONROE STREET Suite 126
STROUDSBURG PA 18360-2115

William Kaetz                        Catherine Kaetz

Plaintiff                            Plaintiff

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
**Plaintiffs**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ            Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
**Plaintiffs**                **CIVIL ACTION ORDER**

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115   **Assigned to:** Judge Claire C. Cecchi
570-517-3009                **Referred to:** Magistrate Judge James B. Clark
**Defendant**                **Cause:** 42:1983 Civil Rights Act

---

## CIVIL ACTION ORDER

I, WILLIAM F. KAETZ, Plaintiff, respectfully submit Civil Action Orders for

plaintiffs' motions filed in the above captioned case.

                          _[signature]_ May 13, 2019

WILLIAM F KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
Plaintiff

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2019 MAY 13 P 2: 35

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
**Plaintiffs**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ                    Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
**Plaintiffs**                     **CIVIL ACTION ORDER**

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115  **Assigned to:** Judge Claire C. Cecchi
570-517-3009               **Referred to:** Magistrate Judge James B. Clark
**Defendant**              **Cause:** 42:1983 Civil Rights Act

---

### ORDER

---

This matter having been brought before the Court on Motion of the Plaintiffs,
(Docket #5) for a Court Order for entry of default, and the Court having considered
the matter and for good cause appearing, it is on this day of _____,
20_____, ORDERED as follows: for entry of default is GRANTED, the court clerk
shall enter default judgement upon defendant in the above captioned case. .

_____
U.S.D.J.

**Pa30**

WILLIAM F KAETZ
CATHERINE KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
**Plaintiffs**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F KAETZ                    Case No.: 2:18-CV-14782-CCC-JBC
CATHERINE KAETZ
**Plaintiffs**                     **CIVIL ACTION ORDER**

vs.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
610 MONROE STREET
STROUDSBURG PA 18360-2115  **Assigned to:** Judge Claire C. Cecchi
570-517-3009               **Referred to:** Magistrate Judge James B. Clark
**Defendant**              **Cause:** 42:1983 Civil Rights Act

## CERTIFICATE OF SERVICE

I, WILLIAM F. KAETZ, hereby certify that on May 13, 2019 by USPS
Priority Express Mail, I served a copy of:

**1.** PLAINTIFFS' CIVIL ACTION ORDER

to defendant's attorney:

E. DAVID CHRISTINE JR.
MONROE COUNTY PA DISTRICT ATTORNEY
610 MONROE STREET SUITE 126
STROUDSBURG PA 18360

## CERIFICATION

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

William F Kaetz                 May 13, 2019
437 Abbott Road
Paramus NJ 07652
201 753 1063
**Plaintiff**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM F. KAETZ and CATHERINE
KAETZ,

Plaintiffs,

v.

COURT OF COMMON PLEAS OF
MONROE COUNTY

Defendant.

Civil Action No.: 18-14782 (CCC)

**ORDER**

### IT APPEARING THAT:

1. On October 9, 2018, *pro se* Plaintiffs instituted this action for "violations of state
   and federal due process and double jeopardy rights" related to a state court
   proceeding in the Court of Common Pleas of Monroe County, "Sean Anthony
   Foster vs Catherine Stephanie Kaetz, docket no. 31 DR 2018/340 CV 2018." (ECF
   No. 1 at 1-2). Plaintiff Stephanie Kaetz was a defendant in that matter and Plaintiff
   William Kaetz is her father. (Id. at 2). Plaintiffs' allegations all relate to the
   underlying matter and what Plaintiffs perceive as an attempt by the state of
   Pennsylvania to take "a second bite at Catherine" for "the same offenses." (Id.)

2. The Complaint requests as relief "a Federal Court Order to Order the Court of
   Common Pleas of Monroe County Forty-Third Judicial District Commonwealth of
   Pennsylvania, to produce transcripts and an audio copy and a video copy of the
   whole entire protection from abuse hearing on February 5th, 2018, the whole day

Pa33

in that courtroom, and all transcripts and video and audio of all other hearings relating to PA docket no. 31 DR 2018/340 CV 2018, the FOSTER v. KAETZ case." (Id. at 7). The Complaint further seeks "compensation for false imprisonment of Catherine Kaetz at a rate of $20,000.00 per day for 12 days totaling $240,000.00 and anything else this court deems just." (Id.).

3. Plaintiffs filed a Motion for Court Order to Subpoena Records and for an Injunction on the same day that the Complaint was filed. (ECF No. 2). The relief sought in that motion is the same relief sought in the Complaint. (*Compare* ECF No. 1 at 7 *with* ECF No. 2 at 7). On February 5, 2019, Plaintiffs filed a Motion for Entry of Default as to the Court of Common Pleas of Monroe County. (ECF No. 5). On May 13, 2019, Plaintiff William Kaetz filed a Proposed Order for default judgment against the Court of Common Pleas of Monroe County. (ECF No. 6).

4. The Court of Common Pleas of Monroe County is a state court in the state of Pennsylvania and the underlying action did not occur in the state of New Jersey; accordingly

IT IS on this $\underline{31}$ day of May, 2019,

**ORDERED** that Plaintiffs will show cause (in writing) why this matter shall not be transferred to the Federal District Court encompassing the Court of Common Pleas of Monroe County, the Federal District Court for the Middle District of Pennsylvania; and it is further

**ORDERED** that Plaintiffs must file their response with the Court on or before July 1, 2019; and it is further

**ORDERED** that if Plaintiffs fail to file a response with the Court by July 1, 2019, then Plaintiffs will be deemed to be in support of the transfer of the Complaint; and it is further

2

Pa34

**ORDERED** that this Order to Show Cause will be decided without oral argument pursuant to Local Civil Rule 78.1(b); and it is further

**ORDERED** that Plaintiffs' Motions for Subpoena and Injunction and Entry of Default (ECF Nos. 2, 5) and Plaintiff William Kaetz's Proposed Order for default judgment (ECF No. 6) are hereby ADMINISTRATIVELY TERMINATED without prejudice; and it is further

**ORDERED** that Plaintiffs are advised that the termination of these motions/submissions is not an adjudication on the merits at this time; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order upon Plaintiffs via regular mail.

    **SO ORDERED.**

CLAIRE C. CECCHI
United States District Judge

3

COUNTY OF MONROE

**PROTECTION FROM ABUSE-INDIRECT CRIMINAL CONTEMPT**

**CHARGE:** Title 23 6113A

OTN: U-548903-5

Misc. #: MD-11-18

CAPTION NUMBER OF COURT ORDER: # _____ Domestic Relations 20 ___

**DEFENDANT:**

CATHERINE STEPHANIE KAETZ
**Name**
329 GILBERT RD
**Address** EFFORT, PA 18330

570 517 1277
**Phone number (home and work)**

06 / 05 / 92 (MM/DD/YYYY)
**Date of Birth**

**COMPLAINANT:**

SEAN A FOSTER
**Name**
115 E 5th ST APT A1 E. STBG PA 18501
**Address (unless confidential- attach additional sheet)**

570 - 856 - 9419
**Phone number (home and work)**

1 / 22 / 2018 (MM/DD/YYYY)
**Date PFA issued (Temporary/Final)**

INVESTIGATING POLICE AGENCY AND OFFICER: PSP STROUDSBURG - TPR. THOMAS A. WHALEN

**VIOLATION DATE:** 1/28/18            **TIME OF VIOLATION:** 1838

**PLACE OF VIOLATION:** 315 SARAH WAY, E STROUDSBURG, PA   VIA PHONE

CIRCUMSTANCES OF VIOLATION (check all appropriate violations):

_____ ATTEMPTED OR ACTUAL ASSAULT        _____ THREAT BY PHYSICAL MENACE        _____ VERBAL THREATS

_____ HARASSMENT        _____ CUSTODY OF CHILDREN        _____ RETURN TO PREMISES AFTER COURT ORDERED EVICTION

BRIEF SUMMARY OF INCIDENT: [ ] Officer's Independent Investigation        [X] Complainant's Version of Incident

AT 6:38 pm I RECIEVED A PHONE CALL FROM CATHERINE KAETZ ON WHICH I
HAVE A TEMPORARY P.F.A. AGAINST. SHE LEFT A VOICE MAIL ON MY PHONE AND TOLD ME
LEFT SAID WHAT HER PLANS ARE, SHE PLANS ON GOING TO COLORADO TO VISIT A FRIEND
AND THEN TO CALIFORNIA TO VISIT ANOTHER FRIEND, AT THE END SHE STATED THE
'COUNT DOWN IS OVER, MEANING SHE PLANS ON TAKING HER LIFE. SHE KNEW SHE WAS
GOING AGAINST THE COURT ORDER. SHE ALSO CALLED WHILE THE OFFICERS WERE PRESENT.

DEFENDANT ALSO ARRESTED FOR THE FOLLOWING SUBSTANTIVE CRIMINAL CHARGES (if any):

_____

I verify that the facts set forth in this affidavit are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Date: 1/28/2018            _____
                          Signature of complainant

I verify that the facts set forth in this affidavit are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Date: 1/28/18            TPR _____ 13516 WHALEN
                         Signature of arresting officer

DATE & TIME OF: ARREST _____ ARRAIGNMENT _____ INCARCERATION _____

BAIL AMOUNT: _____ Additional Bail Conditions: _____

**Pa36**

_____                          _____
Issuing Authority                                SEAL

File Copy

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF MONROE



# Arrest Warrant

Commonwealth of Pennsylvania
v.
Catherine Stephanie Kaetz

| | |
|---|---|
| Mag. Dist. No. : MDJ-43-4-01 | |
| MDJ Name : Honorable Brian Germano | |
| Address : P. O. Box 1127 1155 Red Fox Road Marshall Creek, PA 18335 | |
| Telephone : 570-223-1287 | |

| | | | |
|---|---|---|---|
| Complaint No: | | Issued For: | Catherine Stephanie Kaetz |
| Charging Officer: | Whalen, Thomas | Docket No: | MJ-43401-MD-0000011-2018 |
| Arresting Agency: | PSP - Stroudsburg | | |
| Case Filed: | 01/29/2018 | NCIC OFF: | |
| OTN: | U 548903-5 | OOC: | |
| Reason For Warrant: | Other (Arrest Warrant) | WARRANT ID: | DIS707257670 |
| Offense Date: | 01/28/2018 | Warrant Control No: | 43401-AW-0000004-2018 |
| Lead Offense: | 23 § 6113 §§ A Arrest For Violation of Order | | |

## TO THE OFFICER: Thomas Whalen

In the name of the Commonwealth of Pennsylvania, you are commanded to take the defendant, Catherine Stephanie Kaetz, into custody. When the defendant is taken into custody, bring the defendant before me at the Court address shown above to answer the complaint charging the defendant with the offense(s) set forth above and further to be dealt with according to law.

Witness the hand and official seal of the issuing authority on this 29th day of January, 2018.



January 29, 2018

Date                    Magisterial District Judge Brian Germano



MJ-43401-MD-0000011-2018

43401-AW-0000004-2018

Catherine Stephanie Kaetz

 

FREE INTERPRETER
www.pacourts.us/language-rights
570-517-3009

Pa37

| **FINAL PROTECTION FROM ABUSE ORDER** | IN THE COURT OF COMMON PLEAS OF Monroe COUNTY, PENNSYLVANIA |
|---|---|
| ☐ Extended Order  ☐ Amended Order | NO. 31 DR 2018/340 CV 2018 |

## 1. PLAINTIFF

| SEAN | ANTHONY | FOSTER | | 10/22/1983 |
|---|---|---|---|---|
| First | Middle | Last | Suffix | Plaintiff DOB |

Name(s) of All protected persons, including minor child/ren and DOB.

SEAN ANTHONY FOSTER       10/22/1983

## V.

## DEFENDANT

| CATHERINE | STEPHANIE | KAETZ | |
|---|---|---|---|
| First | Middle | Last | Suffix |

Defendant's Address:

437 ABBOTT RD

PARAMUS New Jersey  07652

| DEFENDANT IDENTIFIERS | | | |
|---|---|---|---|
| DOB | 6/5/1992 | HEIGHT | 5 ft. 5 in. |
| SEX | Female | WEIGHT | 155 |
| RACE | White | EYES | Blue |
| HAIR | Brown | | |
| SSN | | | |
| DRIVERS LICENSE # | | | |
| EXP DATE | | STATE | Pennsylvania |

**CAUTION:**

☐ Weapon Involved

☐ Weapon Present on the Property

☐ Weapon Ordered Relinquished

**The Court Hereby Finds:** That it has jurisdiction over the parties and subject matter, and the Defendant will be provided with reasonable notice and opportunity to be heard.

**The Court Hereby Orders:**

☒ Defendant shall not abuse, harass, stalk or threaten any of the above persons in any place where they might be found.

☒ Except for such contact with the minor child/ren as may be permitted under paragraph 4 of this order, Defendant shall not contact Plaintiff, or any other person protected under this order, by telephone or by any other means, including through third persons.

☒ Additional findings of this order are set forth below.

| **Order Effective Date** | February 5, 2018 | **Order Expiration Date** | February 5, 2021 |
|---|---|---|---|

## NOTICE TO THE DEFENDANT

VIOLATION OF THIS ORDER MAY RESULT IN YOUR ARREST ON THE CHARGE OF INDIRECT CRIMINAL CONTEMPT WHICH IS PUNISHABLE BY A FINE OF UP TO $1,000 AND/OR A JAIL SENTENCE OF UP TO SIX MONTHS. 23 PA.C.S.A. §6114. VIOLATION MAY ALSO SUBJECT YOU TO PROSECUTION AND CRIMINAL PENALTIES UNDER THE PENNSYLVANIA CRIMES CODE. A VIOLATION OF THIS ORDER MAY RESULT IN THE REVOCATION OF THE SAFEKEEPING PERMIT, WHICH WILL REQUIRE THE IMMEDIATE RELINQUISHMENT OF YOUR FIREARMS, OTHER WEAPONS AND AMMUNITION TO THE SHERIFF. PLAINTIFF'S CONSENT TO CONTACT BY DEFENDANT SHALL NOT INVALIDATE THIS ORDER WHICH CAN ONLY BE MODIFIED BY FURTHER ORDER OF COURT. 23 Pa.C.S.A. § 6108(g).

THIS ORDER IS ENFORCEABLE IN ALL FIFTY (50) STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, U.S. TERRITORIES AND THE COMMONWEALTH OF PUERTO RICO UNDER THE VIOLENCE AGAINST WOMEN ACT, 18 U.S.C. §2265. IF YOU TRAVEL OUTSIDE OF THE STATE AND INTENTIONALLY VIOLATE THIS ORDER, YOU MAY BE SUBJECT TO FEDERAL CRIMINAL PROCEEDINGS UNDER THAT ACT. 18 U.S.C. §§2261-2262. IF YOU POSSESS A FIREARM OR ANY AMMUNITION WHILE THIS ORDER IS IN EFFECT, YOU MAY BE CHARGED WITH A FEDERAL OFFENSE EVEN IF THIS PENNSYLVANIA ORDER DOES NOT EXPRESSLY PROHIBIT YOU FROM POSSESSING FIREARMS OR AMMUNITION. 18 U.S.C. §922(g)(8).

5th  February  18

Pa38

Plaintiff or Protected Person(s) is/are:

[X]     Current or Former Sexual or Intimate Partner with Defendant

Defendant was served in accordance with Pa. R.C.P. 1930.4 and provided notice of the time, date and location of the hearing scheduled in this matter.

Appearances by Parties and/or Counsel:

- Plaintiff appeared personally and is represented by: Deborah Huffman, Esquire

- Defendant appeared personally and is represented by: Jennifer Wise, Esquire

AND NOW, this 5th Day of February, 2018 the court having jurisdiction over the parties and the subject-matter, it is ORDERED, ADJUDGED and DECREED as follows:

This Order is entered by agreement without an admission. Without regard as to how the order was entered, this is a final order of court subject to full enforcement pursuant to the Protection From Abuse Act.

### Plaintiff's request for a final protection order is granted.

1.  Defendant shall not abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to Plaintiff or any other protected person in any place where they might be found.

2.  Defendant is prohibited from having ANY CONTACT with Plaintiff, or any other person protected under this order either directly or indirectly, at any location, including but not limited to any contact at Plaintiff's or other protected party's school, business, or place of employment.

3.  Defendant shall not contact Plaintiff, either directly or indirectly, or any other person protected under this order, by telephone or by any other means, including through third persons.

4.  (a) The costs of this action are imposed on Defendant, as follows:
    (b) Upon a showing of good cause or a finding that the Defendant is unable to pay, the costs of this action are waived.

5.  A certified copy of this Order shall be provided to the police department where Plaintiff resides and any other agency specified hereafter:

    **STROUD AREA REGIONAL**

6.  All provisions of this order shall expire in 3 years on February 5, 2021.

### NOTICE TO THE DEFENDANT
VIOLATION OF THIS ORDER MAY RESULT IN YOUR ARREST ON THE CHARGE OF INDIRECT CRIMINAL CONTEMPT WHICH IS PUNISHABLE BY A FINE OF UP TO $1,000 AND/OR A JAIL SENTENCE OF UP TO SIX MONTHS. 23 PA.C.S.A. §6114. VIOLATION MAY ALSO SUBJECT YOU TO PROSECUTION AND CRIMINAL PENALTIES UNDER THE PENNSYLVANIA CRIMES CODE. A VIOLATION OF THIS ORDER MAY RESULT IN THE REVOCATION OF THE SAFEKEEPING PERMIT, WHICH WILL REQUIRE THE IMMEDIATE RELINQUISHMENT OF YOUR FIREARMS, OTHER WEAPONS AND AMMUNITION TO THE SHERIFF. PLAINTIFF'S CONSENT TO CONTACT BY DEFENDANT SHALL NOT INVALIDATE THIS ORDER WHICH CAN ONLY BE MODIFIED BY FURTHER ORDER OF COURT. 23 Pa.C.S.A. § 6108(g).

THIS ORDER IS ENFORCEABLE IN ALL FIFTY (50) STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, U.S. TERRITORIES AND THE COMMONWEALTH OF PUERTO RICO UNDER

THE VIOLENCE AGAINST WOMEN ACT, 18 U.S.C. §2265. IF YOU TRAVEL OUTSIDE OF THE STATE AND INTENTIONALLY VIOLATE THIS ORDER, YOU MAY BE SUBJECT TO FEDERAL CRIMINAL PROCEEDINGS UNDER THAT ACT. 18 U.S.C §§2261-2262. IF YOU POSSESS A FIREARM OR ANY AMMUNITION WHILE THIS ORDER IS IN EFFECT, YOU MAY BE CHARGED WITH A FEDERAL OFFENSE EVEN IF THIS PENNSYLVANIA ORDER DOES NOT EXPRESSLY PROHIBIT YOU FROM POSSESSING FIREARMS OR AMMUNITION. 18 U.S.C. §922(g)(8).

### NOTICE TO SHERIFF, POLICE AND LAW ENFORCEMENT OFFICIALS

The police and sheriff who have jurisdiction over Plaintiff's residence OR any location where a violation of this order occurs OR where Defendant may be located, shall enforce this order. The court shall have jurisdiction over any indirect criminal contempt proceeding, either in the county where the violation occurred or where this protective order was entered. An arrest for violation of paragraphs 1 through 3 of this order may be without warrant, based solely on probable cause, whether or not the violation is committed in the presence of the police or any sheriff. 23 Pa.C.S.A. §6113.

Subsequent to an arrest, and without the necessity of a warrant, the police officer or sheriff shall seize all firearms, other weapons and ammunition in Defendant's possession that were used or threatened to be used during the violation of the protection order or during prior incidents of abuse and any other firearms in Defendant's possession.

The Monroe County Sheriff shall maintain possession of the firearms, other weapons or ammunition until further order of this court.

When Defendant is placed under arrest for violation of this order, Defendant shall be taken to the appropriate authority or authorities before whom Defendant is to be arraigned. A "Complaint for Indirect Criminal Contempt" shall then be completed and signed by the police officer, sheriff OR Plaintiff. Plaintiff's presence and signature are not required to file the complaint.

If sufficient grounds for violation of this order are alleged, Defendant shall be arraigned, bond set, if appropriate and both parties given notice of the date of the hearing.

BY THE COURT:

David J. Williamson, J.

February 5, 2018

Date

Entered pursuant to the consent of plaintiff and defendant:

Plaintiff's Signature

Defendant's Signature

Distribution to:

Plaintiff
Defendent
Local Police
State Police at Stroudsburg
Deborah Huffman, Esquire
Jennifer Wise, Esquire
Sheriff

2018 FEB 5 AM 11 09
MONROE COUNTY, PA
PROTHONOTARY

**Pa40**

## COMPLAINT - WARRANT

| 0258 W 2018 000126 | | THE STATE OF NEW JERSEY |

2018 SEP -8 AM 2:1

VS. CATHERINE S KAETZ

BERGEN COUNTY JAIL INTAKE

NEW MILFORD BORO COURT
930 RIVER ROAD
NEW MILFORD          NJ   07646-0000
201-967-5646   COUNTY OF: BERGEN

ADDRESS: 437 ABBOTT ROAD

PARAMUS          NJ   07652-0000

| # of CHARGES 1 | CO-DEFTS | POLICE CASE #: 20186314 |

**DEFENDANT INFORMATION**
SEX: F   EYE COLOR: BLUE          DOB: 06/05/1992
DRIVER'S LIC. #: K01181158256924          DL STATE: NJ
SOCIAL SECURITY #: xxx-xx-x371   SBI #: 922072G
TELEPHONE #: 570-517-1277   (C)
LIVESCAN PCN #: 023801001377

COMPLAINANT B          CIAVAGLIA
NAME:   930 RIVER ROAD
          NEW MILFORD          NJ   07646

By certification or on oath, the complainant says that to the best of his/her knowledge, information and belief the named defendant on or about 09/07/2018 in   NEW MILFORD BORO   ,   BERGEN   County, NJ did:
WITHIN THE JURISDICTION OF THIS COURT, ENTER THIS STATE AND WAS FOUND TO BE A
FUGITIVE FROM JUSTICE FROM THE STATE OF PENNSYLVANIA, SPECIFICALLY BY
PENNSYLVANIA STATE POLICE STROUDSBURG, REFERENCE NIC# W483012635 IN VIOLATION OF
N.J.S.A 2A:160-10.

PROBABLE CAUSE:   THE ABOVE SUBJECT WAS STOPPED DURING A LAWFUL MOTOR VEHICLE
STOP BY THE UNDERSIGNED. A NCIC CHECK REVEALED THE ACCUSED WAS A FUGITIVE FROM
JUSTICE. WARRANT WAS CONFIRMED BY PCO MILLER - STATE POLICE STROUDSBURG, PA.

9/13/18 dismissal

KEITH A. BACHMANN, J.S.C.

In violation of:

| Original Charge | 1) 2A:160-10 | 2) | 3) |
| AmendedCharge | | | |

CERTIFICATION: I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.
Signed: _____   B   CIAVAGLIA          Date: 09/08/2018

You will be notified of your Central First Appearance/CJP date to be held at the Superior Court in the county of BERGEN
at the following address: BERGEN SUPERIOR COURT
JUSTICE CENTER          10 MAIN STREET          HACKENSACK   NJ 07601-0000
Date of Arrest: 09/07/2018   Appearance Date:          Time:          Phone: 201-527-2400

### PROBABLE CAUSE DETERMINATION AND ISSUANCE OF WARRANT

☐ Probable cause IS NOT found for the issuance of this complaint.

Signature of Court Administrator or Deputy Court Administrator   Date          Signature of Judge          Date

☑ Probable cause IS found for the issuance of this complaint. SUSAN   ARMBRUSTER JUDICIAL OFFICER 09/08/2018
Signature and Title of Judicial Officer issuing Warrant          Date
TO ANY PEACE OFFICER OR OTHER AUTHORIZED PERSON: PURSUANT TO THIS WARRANT YOU ARE HEREBY COMMANDED TO ARREST THE NAMED DEFENDANT AND BRING THAT PERSON FORTHWITH BEFORE THE COURT TO ANSWER THE COMPLAINT.

Bail Amount Set: _____ by: _____
(if different from judicial officer that issued warrant)

| ☐ Domestic Violence – Confidential | ☑ Related Traffic Tickets or Other Complaints | ☐ Serious Personal Injury/ Death Involved |

Special conditions of release:
☐ No phone, mail or other personal contact w/victim
☐ No possession firearms/weapons
☐ Other (specify):

ORIGINAL

Page 1 of 1

**Pa41**

 

| Inmate Database Search | Inmate Database Search Results |

Your search returned the following results. To revise your search, click on the inmate Database Search tab. Click on an row to access an inmate's profile information.

Showing 1 to 1 of 1 results

| Inmate Name (last, first middle) | Booking Number | Permanent ID | Release Date |
|---|---|---|---|
| KAETZ, CATHERINE STEPHANE | E-45559 | E-45559 | 09/19/2018 |

Showing 1 to 1 of 1 results

© Copyright 2007, Digital Solutions, Inc. All Rights Reserved

UNITED STATES OF AMERICA

STATE OF NEW JERSEY

TO WHOM IT MAY CONCERN:

I, Catherine S. Kaetz, was arrested in the County Of Bergen and charged with being a fugitive from the State of Pennsylvania.

I have been informed by the Honorable _____ **KEITH A. BACHMANN, J.S.C.** _____ , Judge of the Superior Court, State of New Jersey, County of Bergen, of my right to the issuance and service of a warrant of extradition by the Governor of the State of Pennsylvania. The Judge has further informed me of my right, with the aid of an attorney, to contest the extradition, that is, the validity of arrest, by the use of a writ of habeas corpus. The Judge has further informed me that if I desire, I can waive such proceedings and consent to be returned to the State of Pennsylvania.

I voluntarily waive the issuance and service of the warrant of extradition provided for by the New Jersey laws. I further voluntarily consent to return to the State of Pennsylvania in the custody of authorized agent(s) from _____ *Pinnsylvania* _____ , the duly authorized agent(s) of the State of Pennsylvania. I am not acting because of any threats, promises, or pressures from anyone at all.

I sign my name to this waiver in the County of Bergen this _13th_ day of _Sept._ , 2018.

_____
Defendant's Signature

In the presence of:

_____ , J.S.C.
**KEITH A. BACHMANN, J.S.C.**

_____
Defendant's Attorney

**Pa43**

SUPERIOR COURT OF NEW JERSEY
COUNTY OF BERGEN
LAW DIVISION

IN THE MATTER OF          :

STATE OF NEW JERSEY   :

       VS                              :

CATHERINE S. KAETZ     :


      It appearing to the Court that the defendant herein named, Catherine S. Kaetz, has waived extradition and has consented in writing to be returned to the demanding State, to wit: Pennsylvania.

      It is therefore on this _13th_ day of _Sept_, 2018, Ordered Catherine S. Kaetz be delivered by the Sheriff of the County of Bergen to the duly accredited agent(s) of the State of Pennsylvania.



_____ , J.S.C.
KEITH A. BACHMANN, J.S.C.


**Pa44**

**BAIL BOND**

Commonwealth of Pennsylvania
v.
Catherine Stephanie Kaetz

DA: 570-517-3052

| | | | |
|---|---|---|---|
| OTN: U 548903-5 | Docket No: MJ-43401-MD-0000011-2018<br>Court No: MDJ-43-4-01 | Date of Charges: | 01/28/2018 |

| | |
|---|---|
| Def Name/Address: Catherine Stephanie Kaetz<br>329 Gilbert Rd<br>Effort, PA 18330 | Next Court Action: |

**LEAD OFFENSE**

23 § 6113 §§ A Arrest For Violation of Order

**ADDITIONAL CHARGES MAY EXIST, PLEASE SEE ADDITIONAL CHARGES PAGE**

**TYPE(S) OF RELEASE:**

☐ ROR ☒ Unsecured Bail ☐ Nonmonetary Condition(s) (see additional page(s))

☐ Nominal Bail ☐ Monetary Condition(s) in the amount of ________

**THE CONDITIONS OF THIS BAIL BOND ARE AS FOLLOWS:**

1. The defendant must appear at all times required until full and final disposition of the case(s).
2. The defendant must obey all further orders of the bail authority.
3. The defendant must provide a current address and must give written notice to the bail authority, the clerk of courts, the district attorney, and the court bail agency or other designated court bail officer, of any change of address within 48 hours of the date of the change.
4. The defendant must neither do, nor cause to be done, nor permit to be done on his or her behalf, any act as proscribed by Section 4952 of the Crimes Code (relating to intimidation of witnesses or victims) or by Section 4953 (relating to retaliation against witnesses or victims), 18 Pa.C.S. § 4952, 4953.
5. The defendant must refrain from criminal activity.
6. The defendant must comply with any fingerprint order, if any is issued by this court.

I verify that the above conditions of bail have been imposed.

September 19, 2018
Date

[signature]
Magisterial District Judge Brian Germano

**TYPES OF SECURITY:**

☐ Cash/Equivalent ☐ Gov't Bearer Bond ☐ Realty within Commonwealth

☐ ______% Cash ☐ Surety Bond ☐ Realty outside Commonwealth

**TOTAL AMOUNT BAIL SET (IF ANY): $1,000.00** (see sureties page)

**BAIL DEPOSITOR(S)**

Depositor Name ______________________ Amount ______________

This bond is valid for the entire proceedings and until full and final disposition of the case including all avenues of direct appeal to the Supreme Court of Pennsylvania.

**I AGREE THAT I WILL APPEAR AT ALL SUBSEQUENT PROCEEDINGS AS REQUIRED AND COMPLY WITH ALL THE CONDITIONS OF THE BAIL BOND.**

**THIS BOND SIGNED ON** ____________________, ____________

**at** ______________________________________, **Pennsylvania**

[signature]
Signature of Defendant

______________________________
Signature of Witness

Defendant's Address:

______________________________ (Surety)

______________________________ (Surety)

Pa45

PLEASE SEE ATTACHED PAGES FOR ADDITIONAL INFORMATION.

# 28 U.S. Code § 1391. Venue generally

<u>U.S. Code</u>     <u>Notes</u>

**(a) APPLICABILITY OF SECTION.**—Except as otherwise provided by law—

**(1)** this section shall govern the <u>venue</u> of all civil actions brought in district <u>courts</u> of the United <u>States</u>; and

**(2)** the proper <u>venue</u> for a civil action shall be determined without regard to whether the action is local or transitory in nature.

**(b) VENUE IN GENERAL.**—A civil action may be brought in—

**(1)** a judicial district in which any defendant resides, if all defendants are residents of the <u>State</u> in which the district is located;

**(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

**(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the <u>court</u>'s personal jurisdiction with respect to such action.

**(c) RESIDENCY.**—For all <u>venue</u> purposes—

**(1)** a natural person, including an alien lawfully admitted for permanent residence in the United <u>States</u>, shall be deemed to reside in the judicial district in which that person is domiciled;

**Pa46**

(2) an entity with the capacity to sue and be sued in its common

**(2)** an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and

**(3)** a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.

### (d) RESIDENCY OF CORPORATIONS IN WITH MULTIPLE DISTRICTS.—

For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

### (e) ACTIONS WHERE DEFENDANT IS OFFICER OR EMPLOYEE OF THE UNITED STATES.—

#### (1) IN GENERAL.—

A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

#### (2) SERVICE.—

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the

required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

**(f) CIVIL ACTIONS AGAINST A FOREIGN STATE.**—A civil action against a foreign state as defined in section 1603(a) of this title may be brought—

**(1)** in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

**(2)** in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

**(3)** in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

**(4)** in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

**(g) MULTIPARTY, MULTIFORUM LITIGATION.**—
A civil action in which jurisdiction of the district court is based upon section 1369 of this title may be brought in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place.

(June 25, 1948, ch. 646, 62 Stat. 935; Pub. L. 87–748, § 2, Oct. 5, 1962, 76 Stat. 744; Pub. L. 88–234, Dec. 23, 1963, 77 Stat. 473; Pub. L. 89–714, §§ 1, 2, Nov. 2, 1966, 80 Stat. 1111; Pub. L. 94–574, § 3, Oct. 21, 1976, 90 Stat. 2721; Pub. L. 94–583, § 5, Oct. 21, 1976, 90 Stat. 2897; Pub. L. 100–702, title X, § 1013(a), Nov. 19, 1988, 102 Stat. 4669; Pub. L. 101–650, title III, § 311, Dec. 1, 1990, 104 Stat. 5114; Pub. L. 102–198, § 3, Dec. 9, 1991, 105 Stat. 1623; Pub. L. 102–572, title V, § 504, Oct. 29, 1992, 106 Stat. 4513; Pub. L. 104–34, § 1, Oct. 3, 1995, 109 Stat. 293; Pub. L. 107–273, div. C, title I, § 11020(b)(2), Nov. 2, 2002, 116 Stat. 1827; Pub. L. 112–63, title II, § 202, Dec. 7, 2011, 125 Stat. 763.)

# 28 U.S. Code § 1404. Change of venue

U.S. Code    Notes

**(a)** For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

**(b)** Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

**(c)** A district court may order any civil action to be tried at any place within the division in which it is pending.

**(d)** Transfers from a district court of the United States to the District Court of Guam, the District Court for the Northern Mariana Islands, or the District Court of the Virgin Islands shall not be permitted under this section. As otherwise used in this section, the term "district court" includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.

(June 25, 1948, ch. 646, 62 Stat. 937; Pub. L. 87–845, § 9, Oct. 18, 1962, 76A Stat. 699; Pub. L. 104–317, title VI, § 610(a), Oct. 19, 1996, 110 Stat. 3860; Pub. L. 112–63, title II, § 204, Dec. 7, 2011, 125 Stat. 764.)

# 28 U.S. Code § 1406. Cure or waiver of defects

U.S. Code     Notes

**(a)** The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

**(b)** Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.

**(c)** As used in this section, the term "district court" includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.

(June 25, 1948, ch. 646, 62 Stat. 937; May 24, 1949, ch. 139, § 81, 63 Stat. 101; Pub. L. 86–770, § 1, Sept. 13, 1960, 74 Stat. 912; Pub. L. 87–845, § 10, Oct. 18, 1962, 76A Stat. 699; Pub. L. 97–164, title I, § 132, Apr. 2, 1982, 96 Stat. 39; Pub. L. 104–317, title VI, § 610(b), Oct. 19, 1996, 110 Stat. 3860.)

# 28 U.S. Code § 1631. Transfer to cure want of jurisdiction

U.S. Code     Notes

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

(Added Pub. L. 97–164, title III, § 301(a), Apr. 2, 1982, 96 Stat. 55; amended Pub. L. 115–332, § 2, Dec. 19, 2018, 132 Stat. 4487.)

💼 U.S. Code Toolbox

Law about... Articles from Wex

Table of Popular Names

**University of Chicago Law School**
# Chicago Unbound

Journal Articles                                                    Faculty Scholarship

1976

# Federal Venue: Locating the Place Where the Claim Arose

Diane P. Wood

Follow this and additional works at: http://chicagounbound.uchicago.edu/journal_articles

 Part of the Law Commons

### Recommended Citation

Diane P. Wood, Comment, "Federal Venue: Locating the Place Where the Claim Arose," 54 Texas Law Review 392 (1976).

This Article is brought to you for free and open access by the Faculty Scholarship at Chicago Unbound. It has been accepted for inclusion in Journal Articles by an authorized administrator of Chicago Unbound. For more information, please contact unbound@law.uchicago.edu.

# Federal Venue:  Locating the Place Where the Claim Arose

## Diane Pamela Wood

Venue, because it receives so little attention from the appellate courts, sometimes seems to be the forgotten cousin in the family of federal procedure. Fathered by the Constitution itself is the concept of subject matter jurisdiction, whose imperatives circumscribe every federal case.[1] Of like importance is personal jurisdiction, which dictates when a person or res has fallen under the power of the court.[2] The place of venue in this hierarchy has often seemed obscure: the concept enjoys statutory sanction, but its status falls below that of jurisdiction. This second class citizenship is precisely what venue merits, if amount of time invested in litigating is the measure of importance. The entire thrust of procedural reform in this century has been toward shifting the center of litigational gravity from procedures to the merits.[3] In keeping with this general philosophy, the goal of the statutory venue system should be to consume as little judicial time as is consistent with overall fairness to all the parties to the lawsuit.

The concept of venue, that there is a particular place where trial should be held,[4] is as old as the separation of the king's general court

---

1. U.S. Const. art. III enumerates the types of cases or controversies over which the federal courts may exercise jurisdiction and specifies the Supreme Court's original jurisdiction.  With the exception of the Court's original jurisdiction, the power of the federal courts to hear cases depends on both constitutional and statutory grants of subject matter jurisdiction.  *See generally* C. Wright, Handbook of the Law of Federal Courts §§ 8, 10 (2d ed. 1970).  This rule is inflexible; any time it appears that subject matter jurisdiction is lacking, the court is duty-bound to dismiss the case sua sponte. *E.g.,* Louisville & N.R.R. v. Mottley, 211 U.S. 149 (1908).

2. The classic case that describes the rationale behind personal jurisdiction is Pennoyer v. Neff, 95 U.S. 714 (1878).  In modern times, the original territorial *raison d'être* of the concept has become attenuated within the fifty states.  It has been replaced by the twin ideas of fair play and substantial justice, enunciated in International Shoe Co. v. Washington, 326 U.S. 310 (1945).  Fair play and substantial justice depend on certain "minimum contacts" with the jurisdiction, according to *International Shoe*; this standard still remains the due process test for the outer limits on the court's power to command the presence of a person or to adjudicate the status of a res.  *E.g.,* Hanson v. Denckla, 357 U.S. 235 (1958); Edwards v. Associated Press, 512 F.2d 258 (5th Cir. 1975).

3. *See, e.g.,* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1029, at 128 (1969).

4. *See* United States *ex rel.* Rudick v. Laird, 412 F.2d 16, 20 (2d Cir.), *cert. denied,* 396 U.S. 918 (1969); Japan Gas Lighter Ass'n v. Ronson Corp., 257 F. Supp.

Pa53

HeinOnline -- 54 Tex. L. Rev. 392 1975-1976

Federal Venue

into the specialized courts of the Exchequer, Common Pleas, King's Bench, and Chancery.[5] Originally, venue was the servant of the court's convenience and assured the availability of jurors who knew the facts of a case.[6] As time passed, the overriding concern of venue law underwent a complete transformation, shifting from the court to the litigants, both in England and in the United States. Thus, in the leading case of *Neirbo Co. v. Bethlehem Shipbuilding Corp.*,[7] the Supreme Court could state as settled law that "the locality of a law suit—the place where judicial authority may be exercised—though defined by legislation relates to the convenience of litigants and as such is subject to their disposition."[8] In a later case, the Court remarked that "the venue provisions are designed, not to keep suits out of the federal courts, but merely to allocate suits to the most appropriate . . . forum."[9]

To establish the convenience of litigants as the paramount concern, however, is only to pose a new question, for the interests of the two parties may well diverge. A choice between plaintiff and defendant may be unavoidable. Perhaps the primary consideration should be to protect the defendant, since he does not control the litigation. Alternatively, perhaps the goal ought to be to ensure that the plaintiff does not lose his day in court because of the expense and difficulty of litigating far from home. Ideally, the location of each trial would optimize the interests of protection of defendant, fairness to plaintiff, speed of trial, and availability of witnesses. Barring achievement of this ideal, if liberal transfer statutes can protect the defendant adequately, and modern transportation facilities can minimize evidentiary problems, then it makes sense to give effect to the plaintiff's initial choice of venue, assuming that he chooses a forum with a logical relation to his claim. This solution facilitates reaching the merits without lingering on procedural

---

219, 224 (D.N.J. 1966). Venue should be distinguished from jurisdiction, which relates to the court's power to act. *See* Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7 (8th Cir. 1965); Brown v. Pyle, 310 F.2d 95 (5th Cir. 1962).

5. Blume, *Place of Trial of Civil Cases*, 48 MICH. L. REV. 1 (1949). The first court to become settled in one place was the Exchequer, which established its permanent residence sometime before the end of the twelfth century. *Id.* at 2-3. At the same time the notion of an appropriate location for the lawsuit emerged, these early courts also became specialized as to subject matter jurisdiction.

6. *Id.* at 3, 20.

7. 308 U.S. 165 (1939).

8. *Id.* at 168. *See* Olberding v. Illinois Cent. R.R., 346 U.S. 338, 340 (1953); Time, Inc. v. Manning, 366 F.2d 690, 696 (5th Cir. 1966); Riley v. Union Pac. R.R., 177 F.2d 673, 675 (7th Cir. 1949), *cert. denied*, 338 U.S. 911 (1950).

9. Brunette Mach. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 710 (1972).

HeinOnline -- 54 Tex. L. Rev. 393 1975-1976

details, and it permits plaintiffs to enforce their legal rights without undue hardship.[10]

## I. The 1966 Amendment to 28 U.S.C. Section 1391: Background and Purpose

The central statute governing federal venue today, 28 U.S.C. Section 1391,[11] establishes venue for all cases in the federal courts, subject to specific provisions in other statutes.[12] In addition to statutory limitations, section 1391 is still fettered by the traditional distinction between local actions and transitory actions, tautologically explained by Chief Justice Marshall as follows:

> The distinction taken is, that actions are deemed transitory, where transactions on which they are founded, might have taken place anywhere; but are local where their cause is in its nature necessarily local.[13]

When the federal venue statutes mention the term "local," they assume that its meaning is clear.[14] This assumption may be sadly unwarranted,

---

10. Candidly, this is a plaintiff-oriented solution. It is, however, consistent with the procedural rules requiring a liberal reading of the complaint, see FED. R. CIV. P. 8(f), and a generous attitude toward amendments to pleadings, see FED. R. CIV. P. 15.

11. 28 U.S.C. § 1391 (1970).

12. Some statutes completely supplant the provisions of § 1391. E.g., 28 U.S.C. § 1400 (1970) (patents and copyrights), construed in Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222 (1957); 28 U.S.C. § 1394 (1970) (national banking associations), construed in First Nat'l Bank v. Williams, 252 U.S. 504 (1920). In other cases some dispute exists whether the general statute and the specific are supplementary or exclusive. Compare Manufacturers Buyers Corp. v. El Dorado Tire Co., 324 F. Supp. 225 (S.D. Fla. 1971) (antitrust venue provision, 15 U.S.C. § 15 (1970), preempts § 1391), with Albert Levine Associates v. Bertoni & Cotti, 314 F. Supp. 169 (S.D.N.Y. 1970) (specific antitrust venue supplements § 1391). See also Fox-Keller, Inc. v. Toyota Motor Sales, U.S.A., Inc., 338 F. Supp. 812 (E.D. Pa. 1972) (supplementary). Note, however, that § 1391 specifies venue "except as otherwise provided by law."

13. Livingston v. Jefferson, 15 F. Cas. 660, 664 (No. 8411) (C.C.D. Va. 1811). Local actions normally deal with land matters, such as trespass, injury to real estate, and title. See Ellenwood v. Marietta Chair Co., 158 U.S. 105, 107 (1895); Miller v. Davis, 507 F.2d 308, 316 n.16 (6th Cir. 1974); Elk Garden Co. v. T.W. Thayer Co., 179 F. 556 (4th Cir. 1910). Transitory actions are then defined negatively, since they are not tied to any specific res; if an action is not local, it is transitory, and the court must acquire jurisdiction over the defendant's person. See Stone v. United States, 167 U.S. 178 (1897); Sax v. Sax, 294 F.2d 133 (5th Cir. 1961); Mauser v. Union Pac. R.R., 243 F. 274 (S.D. Cal. 1917).

  Later courts have protested the tyranny of the old rule, one judge complaining that ". . . it is not easy to escape the past, and the tentacles of the common law causes of action survive as a tangled web requiring careful attention to outmoded procedural concepts." Wheatley v. Phillips, 228 F. Supp. 439, 440 (W.D.N.C. 1964) (Craven, C.J.). The rule nevertheless persists.

14. Two statutes expressly recognize "local" suits: 28 U.S.C. § 1392 (1970) (venue where defendants reside in different districts of the same state); id. § 1393 (venue in proper division of district).

Federal Venue

for as a matter of practice courts hold both that state law defines a local action and that state law fixes its venue.[15] Section 1391 therefore applies only to transitory actions,[16] although in point of fact transitory actions do make up the vast bulk of federal business. Supplementing the general venue statute are two critical provisions that permit transfer of venue under special circumstances: section 1404(a),[17] allowing transfer for the convenience of parties and in the interest of justice, and section 1406(a),[18] allowing transfer or dismissal when the claim is filed in the wrong district or division. Relative newcomers to the venue system,[19] these provisions supply needed flexibility[20] and give defendants protection against truly inconvenient forums. On the negative side, they have filled the law reports with an inordinate number of venue decisions, because the courts have interpreted the permissible transfer districts very restrictively.[21] Nevertheless, the ease of transfer is directly related to the number of authorized districts in the first place; thus if the general venue statute is expanded through legislation or interpretation, the transfer statutes will follow suit.

Section 1391 has progressed through several permutations since the Judiciary Act of 1789 originally provided for venue in civil cases.[22] Its direct ancestor was the Act of March 3, 1887, as corrected a year

15. Mississippi & Mo. RR. v. Ward, 67 U.S. (2 Black) 485 (1863); Tuscarora Nation of Indians v. Power Authority, 161 F. Supp. 702 (S.D.N.Y.), cert. denied, 358 U.S. 841 (1958); Hasburgh v. Executive Aircraft Co., 35 F.R.D. 354 (W.D. Mo. 1964). See generally C. WRIGHT, supra note 1, § 42, at 157-58.

16. E.g., Elk Garden Co. v. T.W. Thayer Co., 179 F. 556 (4th Cir. 1910); Pellerin Laundry Mach. Sales Co. v. Hogue, 219 F. Supp. 629 (W.D. Ark. 1963); Cobb v. National Lead Co., 215 F. Supp. 48 (E.D. Ark. 1963). See generally 1 W. BARRON & A. HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE § 72, at 362 (Wright ed. 1960).

17. 28 U.S.C. § 1404(a) (1970).

18. Id. § 1406(a).

19. The transfer provisions were added in the 1948 revision of the Judicial Code. See generally C. WRIGHT, supra note 1, § 44, at 162 & n.1.

20. Nevertheless, both transfer provisions are indirectly limited by the original venue statute: § 1404(a) permits transfer only to a district or division where the claim "might have been brought," and § 1406(a) is similarly limited to the place where it "could have been brought."

21. See Hoffman v. Blaski, 363 U.S. 335 (1960); Kitch, Section 1404(a) of the Judicial Code: In the Interest of Justice or Injustice?, 40 IND. L.J. 99 (1965); Note, The Problems Regarding the Federal Transfer Statute—Much Ado About Nothing, 42 ST. JOHN'S L. REV. 93 (1967).

22. The Act provided:

[N]o civil suit shall be brought . . . against an inhabitant of the United States, by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ . . . .

Act of Sept. 24, 1789, ch. 20, § 11, 1 Stat. 73, 79. For a discussion of the historical development of the venue laws see Barrett, Venue and Service of Process in the Federal Courts—Suggestions For Reform, 7 VAND. L. REV. 608, 609-12 (1954).

later.[28] The 1887 Act awkwardly stated that suit should not be brought in

> any other district than that whereof [the defendant] is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant.[24]

Why Congress chose to be more generous in diversity cases than in the new federal question cases has remained a mystery;[25] nevertheless, the discrepancy has survived several revisions and persists in the law today.[26] Little change took place until the 1948 revision of the Judicial Code, and even then the alterations were comparatively minor phrasing changes.[27]

In 1959, the Judicial Conference of the United States recommended that the general venue statute be broadened for tort actions to include the place where the tort was committed.[28] Three years later, the Conference endorsed a more sweeping change, which would have added as a permissible venue any district where the claim arose.[29] Congress responded cautiously in 1963 with an amendment permitting venue in automobile tort cases in the district where the act or omission occurred.[30]

---

23. Act of Mar. 3, 1887, ch. 373, 24 Stat. 552, *as amended* by Act of Aug. 13, 1888, ch. 866, 25 Stat. 433.

24. *Id.*

25. The choice is baffling for several reasons. First, both the initial justification for diversity jurisdiction and its continuing merit have been hotly debated. *See generally* P. BATOR, D. SHAPIRO, P. MISHKIN & H. WECHSLER, HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1053-59 (2d ed. 1973); C. WRIGHT, *supra* note 1, § 23. Second, one would think that Congress would want to facilitate federal question cases in the federal courts, because the federal courts would have a body of expertise to contribute, but Congress did not confer general federal question jurisdiction on the federal courts until it passed the Act of Mar. 3, 1875, ch. 137, § 1, 18 Stat. 470.

26. No change in this aspect of the statute was made in the 1948 revision of the Judicial Code. *See* Act of June 25, 1948, ch. 646, 62 Stat. 935. Neither was it changed in the subsequent amendments contained in the Acts of Oct. 5, 1962, Pub. L. No. 87-748, § 2, 76 Stat. 744; Dec. 23, 1963, Pub. L. No. 88-234, 77 Stat. 473; and Nov. 2, 1966, Pub. L. No. 89-714, §§ 1, 2, 80 Stat. 1111.

27. In place of the phrase "whereof he is an inhabitant" the revisor put the word "reside[s]." Act of June 25, 1948, ch. 646, 62 Stat. 935. The other change brought the statute into harmony with the Supreme Court's construction of its meaning by substituting "all plaintiffs" and "all defendants" for the singular of those terms. *Id.* *See* Smith v. Lyon, 133 U.S. 315 (1890).

28. Annual Report of the Proceedings of the Judicial Conference of the United States, at 316 (1959).

29. Annual Report of the Proceedings of the Judicial Conference of the United States, at 11 (1962).

30. Act of Dec. 23, 1963, Pub. L. No. 88-234, 77 Stat. 473 (codified at 28 U.S.C. § 1391(f)).

**396**                                                        **Pa57**

Federal Venue

Even with the 1963 patchwork, section 1391 was still in serious need of mending. Perhaps the most appalling aspect was the gaping hole that existed in multiple-party diversity actions: unless all of the plaintiffs or all of the defendants resided in a single district, the action simply could not be entertained in federal court,[31] however satisfactory jurisdiction and process might be. In a federal question case, it was enough to bar venue if two defendants resided in different districts. If the parties in the latter case were unfortunate enough to have suffered an injury cognizable exclusively in the federal courts, they were utterly denied the right to sue. Even if they were not literally locked out of court, they were frequently compelled to litigate in a district convenient to neither side.[32] Because courts strictly construed "residence" to mean legal domicile,[33] the cases were legion in which the parties faced the dismal prospect of litigating miles from home, witnesses, and records. The vagaries of state process statutes posed yet another problem, particularly for a plaintiff relying on his own residence for venue in a diversity case. Whether his own state's long-arm statute could reach the defendant was a matter of pure fortuity. Finally, Congress again failed to eradicate the anomaly permitting more venue options in diversity cases than in federal question cases.[34]

In 1966, Congress attempted once again to cure the deficiencies in the venue system. Responding to the continued pressure of the Judicial Conference[35] and to the criticisms of commentators and scholars,[36] it added the district "in which the claim arose" to subsections (a)[37] and (b)[38] of section 1391, and repealed the special automobile subsection.[39]

---

31. C. WRIGHT, *supra* note 1, § 42, at 151; Barrett, *supra* note 22, at 621.
32. C. WRIGHT, *supra* note 1, § 42, at 151; Barrett, *supra* note 22, at 612. The transfer provisions could not alleviate this situation since the original scope of venue was so narrow. *See* Van Dusen v. Barrack, 376 U.S. 612 (1964).
33. King v. Wall & Beaver St. Corp., 145 F.2d 377, 379 (D.C. Cir. 1944); Smith v. Murchison, 310 F. Supp. 1079 (S.D.N.Y. 1970).
34. *See* note 25 *supra*.
35. *See* S. REP. No. 1752, 89th Cong., 2d Sess. 1 (1966).
36. *E.g.*, Barrett, *supra* note 22, at 608-09; Blume, *supra* note 5, at 39-40. *See also* Stevens, *Venue Statutes: Diagnosis and Proposed Cure*, 49 MICH. L. REV. 307 (1951) (discussion of state venue statutes).
37. Act of Nov. 2, 1966, Pub. L. No. 89-714, § 1(a), 80 Stat. 1111, *amending* Act of June 25, 1948, ch. 646, § 1391(a), 62 Stat. 935, *codified at* 28 U.S.C. § 1391(a) (1970) (actions based solely on diversity).
38. Act of Nov. 2, 1966, Pub. L. No. 89-714, § 1(b), 80 Stat. 1111, *amending* Act of June 25, 1948, ch. 646, § 1391(b), 62 Stat. 935, *codified at* 28 U.S.C. § 1391(b) (1970) (actions not based solely on diversity).
39. Act of Nov. 2, 1966, Pub. L. No. 89-714, § 2, 80 Stat. 1111, *repealing* Act of Dec. 23, 1963, Pub. L. No. 88-234, 77 Stat. 473.

**Pa58**

**397**

Texas Law Review                    Vol. 54:392, 1976

The meager legislative history of the amendment sheds no light on why Congress chose this particular wording over numerous possible alternatives.[40] The suggested phrasings included "where the cause of action or part arose,"[41] "where the cause of action, or part thereof, arose or accrued,"[42] and the American Law Institute's "[where a] substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[43] Although the reports and debates indicate that Congress may not have foreseen the wide application of the new law,[44] experience under the amendment has proven it useful in areas as diverse as antitrust,[45] patent and trademark infringement,[46] securities law,[47] and labor law.[48] The courts, perhaps better able to see the forest for the trees, have consistently viewed the amendment as part of a general trend to expand venue wherever possible.[49]

By opening up the forum in which the claim arose, the amendment eliminated with one stroke the most egregious shortcoming of the former

---

40. The Senate Report on the bill consisted of an uninformative quote from the House Report:
   This enlargement of venue authority will facilitate the disposition of both contract and tort claims by providing, in appropriate cases, a more convenient forum to the litigants and the witnesses involved.
S. REP. No. 1752, 89th Cong., 2d Sess. 1-2 (1966). Yet the chief sponsor of the bill in the House reassured another member that the legislation would not affect tort venue at all, as it was aimed only at minor changes in contract actions. 112 CONG. REC. 21756 (1966) (remarks of Representative Brooks).

41. Blume, *supra* note 5, at 39.

42. Stevens, *supra* note 36, at 310.

43. ALI STUDY OF THE DIVISION OF JURISDICTION BETWEEN THE STATE AND FEDERAL COURTS §§ 1303, 1314 (1969) [hereinafter cited as ALI STUDY]. Tentative Draft No. 2, 1964, contained essentially the same language.

44. *See* note 40 *supra*.

45. *E.g.*, Morton Bldgs. of Nebraska, Inc. v. Morton Bldgs., Inc., 333 F. Supp. 187, 193 (D. Neb. 1971); Albert Levine Associates v. Bertoni & Cotti, 314 F. Supp. 169, 170 (S.D.N.Y. 1970).

46. *E.g.*, Scott Paper Co. v. Scott's Liquid Gold, Inc., 374 F. Supp. 184, 189-90 (D. Del. 1974) (trademark); Uniroyal, Inc. v. Sperberg, 63 F.R.D. 55, 59-60 (S.D.N.Y. 1973) (declaratory judgment for patent).

47. *E.g.*, Alameda Oil Co. v. Ideal Basic Indus., Inc., 313 F. Supp. 164, 168-69 (W.D. Mo. 1970); Smith v. Murchison, 310 F. Supp. 1079, 1089 (S.D.N.Y. 1970).

48. *E.g.*, Brotherhood of Locomotive Eng'rs v. Denver & R.G.W.R.R., 290 F. Supp. 612, 615-16 (D. Colo. 1968), *aff'd*, 411 F.2d 1115 (10th Cir. 1969).

49. Penrod Drilling Co. v. Johnson, 414 F.2d 1217, 1224-25 (5th Cir. 1969), *cert. denied*, 396 U.S. 1003 (1970). *See* Gardner Eng'r Corp. v. Page Eng'r Co., .484 F.2d 27, 33 (8th Cir. 1973); Albert Levine Associates v. Bertoni & Cotti, 314 F. Supp. 169, 170 (S.D.N.Y. 1970); Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 291 F. Supp. 252, 259 (E.D. Pa. 1968). *Cf.* Pure Oil Co. v. Suarez, 384 U.S. 202, 204-05 (1966) (liberalizing purpose underlies 1948 amendment to § 1391(c)). *But see* Honda Associates, Inc. v. Nozawa Trading, Inc., 374 F. Supp. 886, 891-92 (S.D.N.Y. 1974).

**398**                                                    **Pa59**

Federal Venue

statute: a district will now always exist in which venue will lie. This alone made it a significant improvement in federal venue. Still, since some of the old problems refused to vanish,[50] it was far from a panacea for known difficulties. Worse yet, new ambiguities and questions materialized where none had existed before.

## II.   The 1966 Amendment in Operation

### A.   Construction

From the beginning, commentators predicted that the new language would breed litigation.[51] Shortly after the statute became effective, the Supreme Court had occasion to comment on its scope in *Denver & Rio Grande Western Railroad v. Brotherhood of Railroad Trainmen.*[52] The Court, in the course of deciding to apply the amendment retrospectively, held unequivocally that the new phrase left the substantive law applicable to a case unchanged because its effect was wholly procedural.[53] The Court's only additional opportunity to consider the statute arose peripherally in the opinion in *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*[54]   There it stressed that the 1966 amendment was intended to close the gap in venue law that had existed for multiple-plaintiff or multiple-defendant cases, saying simply that "in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap."[55] Avoidance of gaps and care not to permit substantive changes because of the amendment seem straightforward guidelines as far as they go. Nevertheless, the lower courts have had a more difficult time with the amendment than this scanty appellate attention would indicate.

The first problem in construing the new language lies in the provision that venue will lie in "the" district where the claim arose. Logically, the use of the definite article ought to imply that only one district exists that matches the description, but this reading is undesir-

---

50.  *E.g.*, the narrower scope of federal question venue and the dependency on state long-arm statutes.

51.  *See* Foster, *Judicial Economy; Fairness and Convenience of Place of Trial: Long-Arm Jurisdiction in District Courts*, 47 F.R.D. 73, 78 (1968).   Foster feared that the phrase would "unnecessarily [invite] litigation," preferring the ALI proposal.

52.  387 U.S. 556, 563 (1967).

53.  *Id.*   Justice Black agreed in his dissent that the amendment applied to pending cases.  *Id.* at 570.   The Fifth Circuit followed the directive to apply the amendment retroactively in Penrod Drilling Co. v. Johnson, 414 F.2d 1217 (5th Cir. 1969), *cert. denied*, 396 U.S. 1003 (1970).

54.  406 U.S. 706, 710 n.8 (1972).

55.  *Id.*

able because the policies behind the venue statute would allow most claims to be adjudicated in any one of several districts.[56] For pragmatic reasons, therefore, the courts have been receptive to the idea that "the" judicial district can refer to any district in which a substantial or significant part of the claim arose.[57] Related to the question of the number of permissible districts is the meaning of "the claim." It might mean the largest part of a claim (or the whole claim, whatever that would be), but it might mean either a substantial part of a claim, or just any part that was not de minimis.[58] If either of the latter two constructions were adopted, the effect would be to allow nonexclusive districts in by the back door. On the other hand, it is difficult to pin down a satisfactory definition of a "claim." One court bravely tried, holding that "claim" meant "the aggregate of operative facts giving rise to a right enforceable in the courts,"[59] but nothing assures that the facts are susceptible to aggregation in such a way as to point to one and only one district for venue. This implication that only one district must be found is one of the greatest weaknesses of the new statute.

Even if it were possible to know with certainty what a claim was and how much of it was required to establish venue, it would still be difficult to determine where it "arose." Substantive law often assigns one place rather arbitrarily as the place where the claim arose, such as the place of execution or place of performance in contract law or the place of manufacture or place of sale in products liability law.[60] Federal law obviously governs this issue in a federal question case, but the courts have become hopelessly confused over which law governs in a diversity

---

56. For example, in an antitrust case many districts might serve the convenience of the parties equally well. To fix the locus of the claim in any one place could be extremely artificial. The same is true of products liability cases. *Cf.* Comment, *Choice of Law: Statutes of Limitations in the Multistate Products Liability Case*, 48 TUL. L. REV. 1130 (1974).

57. *See generally* Judge Friendly's suggestion in Liberation News Serv. v. Eastland, 426 F.2d 1379, 1382 n.4 (2d Cir. 1970); Carter-Wallace, Inc. v. Ever-Dry Corp., 290 F. Supp. 735, 739 (S.D.N.Y. 1968). *Cf.* Rosen v. Solomon, 374 F. Supp. 915, 919-20 (E.D. Pa. 1974) (immaterial for personal jurisdiction that contract may have had significant connections with other states). *See generally* ALI STUDY, *supra* note 43.

58. Honda Associates, Inc. v. Nozawa Trading, Inc., 374 F. Supp. 886, 890 (S.D.N.Y. 1974). The *Honda Associates* court found it unnecessary to decide between "largest" and "substantial." Earlier, the Eighth Circuit had followed the ALI's definition and used "substantial." Gardner Eng'r Corp. v. Page Eng'r Co., 484 F.2d 27, 33 (8th Cir. 1973). *See* ALI STUDY, *supra* note 43, §§ 1303(a)(1), 1314(a)(1).

59. Ryan v. Glenn, 52 F.R.D. 185, 192 (N.D. Miss. 1971); *accord*, Geodynamics Oil & Gas, Inc. v. U.S. Silver & Mining Corp., 358 F. Supp. 1345, 1347 (S.D. Tex. 1973); Uniroyal, Inc. v. Sperberg, 63 F.R.D. 55, 59 (S.D.N.Y. 1973).

60. *E.g.*, Smith v. Murchison, 310 F. Supp. 1079 (S.D.N.Y. 1970). *Cf.* TEX. REV. CIV. STAT. ANN. art. 1995 (1964).

**400**                                                      **Pa61**

Federal Venue

case,[61] forgetting that venue, as a procedural matter, does not come under the rule of *Erie Railroad v. Tompkins*.[62] As a result, plaintiffs in some districts must ascertain the place where the claim arose under state law, and in other districts they must apply federal law.

### B.  *Venue Versus Choice of Law*

A corollary problem to the construction of the statute, reminiscent of conflicts of law, is the question which district court's decision will determine the law of the case insofar as venue is concerned. This complication arises only if one party attempts to transfer the case to another district under section 1406(a),[63] which governs transfer when the first venue is "wrong." If plaintiff sued in the Western District of Texas, but that court decided that the claim really arose in the Central District of California, upon request the Texas court would transfer the case to the California court. The California court would then probably be free to make its own determination of where the claim arose under the reasoning of *Hoffman v. Blaski*.[64] In that case, Blaski had brought a patent infringement suit in the Northern District of Texas. Defendants moved to transfer to the Northern District of Illinois, a place where plaintiff did not have the right to sue initially. Granting the motion, the Texas court transferred the case; the Fifth Circuit refused to vacate the district court's order. In Illinois, plaintiffs moved to remand the case to the Texas court. Although the district judge denied this motion, the Seventh Circuit granted a writ of mandamus ordering him to remand. The Fifth and Seventh Circuits were then in direct conflict over the question whether a district court had the power to transfer to a district where plaintiff did not have the right to sue. The Supreme Court affirmed the Seventh Circuit, holding that the Illinois court had the duty to determine venue for itself.[65] Thus, by analogy to the *Hoffman* situation, if the California court in the example above disagreed with the

---

61. *See, e.g.,* Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 291 F. Supp. 252 (E.D. Pa. 1968).

62. 304 U.S. 64 (1938) (Rules of Decision Act, 28 U.S.C. § 1652 (1970), requires federal courts to follow state substantive law, both statutory and judge-made, in a diversity case).

63. This type of problem might be less likely to arise with a § 1404(a) transfer, since by hypothesis the first district is permissible under the statute. *But see* Hoffman v. Blaski, 363 U.S. 335 (1960).

64. 363 U.S. 335 (1960).

65. At least one district court has expressed great frustration and dissatisfaction with the practical effect of the *Hoffman* result. Ferri v. United Aircraft Corp., 357 F. Supp. 814, 816 (D. Conn. 1973).

Texas court and felt that the claim did arise in the Western District of Texas, it would be free to transfer the case back to Texas. The specter appears of the two courts sending the case back and forth ad infinitum—the renvoi dilemma of conflicts.[66] The absurdity of this result is apparent. In the interest of efficient treatment of procedural issues like venue, the first court's conclusion should be binding for that litigation. *Hoffman* poses an obstacle to this solution only if it is extended to the amended language of section 1391. As Justice Frankfurter so cogently pointed out in his dissent to *Hoffman*,[67] a litigant should not be kept perpetually shuttling from one district to another until the Supreme Court rescues him; the statute should either make the first court's determination final or at least minimize the likelihood of initial refusal by broadening venue.

*Hoffman*'s renvoi-like problem illustrates only one instance in which the determination of federal venue seems to borrow concepts from choice of law. Many of the tests that courts are evolving to ascertain where a claim arose also derive from conflicts doctrine.[68] This superficial similarity, however, should not obscure the fundamentally different policies underlying the two areas. The movement in conflicts analysis is away from a rigid, rule-oriented determination of the governing jurisdiction towards a flexible, policy-oriented interest analysis that considers many factors.[69] Because the very law of the case depends on the resolution of the interests of competing jurisdictions, a careful, policy-oriented approach is fully justified. Venue, in contrast, has no bearing at all on the parties' substantive rights. Under *Erie* and *Klaxon Co. v. Stentor Electric Manufacturing Co.*,[70] any federal court should apply the same law on the merits. A matter that is solely a secondary procedural question warrants a more predictable, mechanical approach. Cer-

---

66. Renvoi, defined in RESTATEMENT (SECOND) OF CONFLICTS § 8 (1971), covers the situation in which the forum state is directed by its own choice of law rule to apply "the law" of another state. The Restatement specifically provides that "the law" refers to local law exclusive of the choice of law rules in this particular context. Only in rare instances, set out in Comment *b* to § 8, will the forum also apply the choice of law rules of the second state. Otherwise, the problem of each state referring back to the other would arise.

67. 363 U.S. at 345. Frankfurter argued that a single judicial appellate remedy should be enough, stating that "a prior decision of a federal court on the unfundamental issue of venue ought to receive a similar respect from a coordinate federal court when the parties and the facts are the same." *Id.* at 350.

68. Among others are the weight of contacts test and the place of injury test discussed below.

69. *See generally* Wechsler, *Introduction* to RESTATEMENT (SECOND) OF CONFLICTS vii-ix (1971).

70. 313 U.S. 487 (1941).

Federal Venue

tainly the risk of ending up in the "wrong" district is much less than the risk of having the wrong substantive law govern the parties' rights. Venue's orientation toward convenience may thus argue for a more automatic test than the interest analysis approach of choice of law.

## C.   Approaches for Determining Where the Claim Arose

A bewildering array of approaches has evolved, all purporting to guide a court in deciding where a claim arose. Some courts, apparently unaware that any tests exist, merely state their conclusions without further elucidation. The opinions of other courts, while failing to cite relevant cases or mention any specific "test," conform to one or more categories after the fact. Finally, some judges have made an explicit attempt to articulate a useful test and to apply it to the facts before them. Yet even in this third category, a court may confront a dismaying number of approaches in a new fact situation. The number of tests, in itself an indication of the statute's shortcomings, renders it difficult to predict which line of thought will appeal to a given judge in a particular case. This in turn makes it difficult for the litigant to know whether or not he has selected a proper forum. Of course, if he has guessed incorrectly, the court would probably grant a section 1406(a) transfer, but most plaintiffs would prefer to avoid the delay inherent in the transfer process. In addition, the uncertainty of the area encourages defendants to litigate the question of venue rather than to accept the place of trial and move on to the merits. Even so, the following examination of each of the current tests shows that they are approaching a workable analysis, and that they are clearly preferable to no discussion at all.

1.   *Weight of contacts.*—One of the more widely used approaches inquires where the "contacts" weigh most heavily.[71] This test

---

71. The weight of contacts test was probably borrowed from the area of conflicts of law. *See* RESTATEMENT (SECOND) OF CONFLICTS §§ 6, 9 (1971).

Herbert Wechsler's Introduction to the Second Restatement of Conflicts describes "the jettisoning of a multiplicity of rigid rules in favor of standards of greater flexibility" represented in the revised version:

Restatement Second supplants these [vested-rights] rules by the broad principle that rights and liabilities with respect to a particular issue are determined by the local law of the State which, as to that issue, has "the most significant relationship" to the occurrence and the parties. The "factors relevant" to that appraisal, absent a binding statutory mandate, are enumerated generally (§ 6) to "include":

"(a) the needs of the interstate and international systems,
"(b) the relevant policies of the forum,
"(c) the relevant policies of other interested states and the relative in-

**Pa64**

**403**

was inaugurated in *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*,[72] an antitrust action in which the plaintiffs unsuccessfully tried to preserve venue by using the general venue statute as a supplement to the Clayton Act venue provision.[73] Although the court found no fault with this as a matter of law,[74] it found that venue failed even under the more generous statute, since the claim did not arise in its district. It explained its test as follows:

> "[W]here the claim arose" should be dependent upon where the contacts weigh most heavily. A "weight of the contacts" test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district.[75]

As the court phrased its test, it is not clear whether it thought that only one district would exist in which the contacts weighed most heavily, or whether the "significant sales" and "other overt act" parts were in the alternative, with venue possibly lying in each district. Although the latter construction would be preferable, it is slightly strained, given the court's use of the word "most," which implies that only one place would be proper.

The courts that have followed *Philadelphia Housing* have reflected this ambiguity. In *Travis v. Anthes Imperial Ltd.*,[76] a securities fraud case, the district court seized on the word "most" and concluded that venue was not proper in its district, since the weight of contacts lay

terests of those states in the determination of the particular issue,
    "(d) the protection of justified expectations,
    "(e) the basic policies underlying the particular field of law,
    "(f) certainty, predictability and uniformity of result, and
    "(g) ease in the determination and application of the law to be applied."

Wechsler, *Introduction* to RESTATEMENT (SECOND) OF CONFLICTS at vii-viii (1971). *See also* Weintraub, *Beyond Dépeçage: A "New Rule" Approach to Choice of Law in Consumer Credit Transactions and a Critique of the Territorial Application of the Uniform Commercial Code*, 25 CASE W. RES. L. REV. 16, 17 (1974).

72. 291 F. Supp. 252 (E.D. Pa. 1968).
73. 15 U.S.C. § 15 (1970).
74. *Accord*, United States Dental Inst. v. American Ass'n of Orthodontists, 396 F. Supp. 565 (N.D. Ill. 1975); Arnold v. Smith Motor Co., 389 F. Supp. 1020 (N.D. Iowa 1974). *But see* Albert Levine Associates v. Bertoni & Cotti, 309 F. Supp. 456, 461 (S.D.N.Y. 1970). Accepting the premise that venue statutes should be liberally construed in order to minimize time spent on subsidiary issues, the result stating that the antitrust venue statute merely supplemented the general statute seems wise.
75. 291 F. Supp. at 260-61.
76. 331 F. Supp. 797 (E.D. Mo. 1971), *rev'd*, 473 F.2d 515 (8th Cir. 1973).

Federal Venue

overwhelmingly in Canada.[77] The Eighth Circuit reversed,[78] apparently accepting the view that if contacts are ponderous enough, venue is proper, even though they have considerable weight in other districts or jurisdictions as well. Two antitrust cases likewise adopted different interpretations of the *Philadelphia Housing* test. In *ABC Great States, Inc. v. Globe Ticket Co.*[79] the court employed the method used by the *Travis* district court: it looked to the most significant conspiratorial acts for the key to venue, because it feared that a "significant sales causing substantial injury" approach would not limit venue sufficiently, given the nationwide scope of the conspiracy. Implicit in this holding is the value judgment that it is desirable (or perhaps necessary) to limit venue—a questionable assumption if the conspiracy in fact had a substantial effect on a large number of districts. In contrast, a district court applying the weight of contacts test in *California Clippers, Inc. v. United States Soccer Football Association*[80] concluded as did the Eighth Circuit that it had venue upon finding several significant contacts within its own district. It specifically found immaterial the fact that significant contacts had also taken place in other districts. A third court phrased its conclusion about the weight of contacts in the alternative, finding they were either in Virginia or in California, but definitely not in Pennsylvania.[81] Thus, it appeared to be on the side of the *Travis* district court.

Two courts have used the weight of contacts test in a result-oriented way. Both cases were private actions brought under the antitrust laws alleging conspiratorial acts.[82] In an action against the Atlantic Coast Football League, the district court found that plaintiff had failed to prove that the claim arose where "[t]here [was] no indication . . . that the ACFL had a member team or participated in football exhibitions or derived any substantial benefit from activities carried on within this jurisdiction during the pendency of this action."[83] The court's inclusion of derivation of benefit from acts within the district implies

---

77.  331 F. Supp. at 806.
78.  473 F.2d at 529.
79.  310 F. Supp. 739, 743 (N.D. Ill. 1970).
80.  314 F. Supp. 1057, 1063 (N.D. Cal. 1970).
81.  Fox-Keller, Inc. v. Toyota Motor Sales, U.S.A., Inc., 338 F. Supp. 812, 816 (E.D. Pa. 1972).
82.  United States Dental Inst. v. American Ass'n of Orthodontists, 396 F. Supp. 565 (N.D. Ill. 1975); Redmond v. Atlantic Coast Football League, 359 F. Supp. 666, 670 (S.D. Ind. 1973).
83.  359 F. Supp. at 670, relying on Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 291 F. Supp. 252 (E.D. Pa. 1968) and California Clippers, Inc. v. United States Soccer Football Ass'n, 314 F. Supp. 1057 (N.D. Cal. 1970).

**Pa66**
**405**

that acts carried on there whose effects are felt elsewhere may establish
venue. Another district court established venue in the district where the
effects were felt from acts committed elsewhere. In an action against the
American Association of Orthodontists for their refusal to certify a part-
time school, the Illinois court supported its own venue in part on the
basis of conspirators' meetings in Texas and Missouri that were designed
to block the Illinois plaintiff's certification.[84] The common thread of
these two cases is that in each the court bifurcated act and result for the
purpose of venue analysis. Viewing weight of contacts as a liberal,
balancing approach, these decisions seem sound. As a prima facie
matter, either an act or its result should be enough of a contact to secure
venue in the district.

The Northern District of Iowa presently holds the prize for the
most liberal application to date of the weight of contacts test. In *Arnold
v. Smith Motor Co.*[85] the court carefully considered the developments in
venue law since the 1966 amendment and analyzed the new statute in
light of the policies behind modern venue. It purported to find precedent
for an approach in which the court's only task was to refuse venue where
the contacts were miniscule.[86] The court finally appealed directly to the
purpose and policy of venue to justify its view of the law:

> Venue has been considered as the place where jurisdic-
> tion may be exercised, and while it affords some protection
> to defendants, it is designed to facilitate the maximum con-
> venience for *all* the litigants. . . . The 1966 Amendment
> to § 1391 evidenced a concern for a forum convenient to the
> aggrieved party as well as the defendant. . . . Modern
> means of transportation and the availability of a motion for
> transfer under 28 U.S.C. § 1404 in a case of extreme incon-
> venience have obviated the need for a strict venue rule based
> on a theory of geographic hardship to the defendant.[87]

When the 1966 amendment receives this kind of enlightened construc-
tion, the law has achieved as much as can be hoped for. To the extent

---

84. 396 F. Supp. at 574.
85. 389 F. Supp. 1020 (N.D. Iowa 1974).
86. The court cited Honda Associates, Inc. v. Nozawa Trading, Inc., 374 F. Supp.
886 (S.D.N.Y. 1974) for this proposition. 389 F. Supp. at 1023. This seems to turn
*Honda* on its head: in that case, the overwhelming weight of contacts was in California.
Transferring, the Southern District of New York judge commented that it was unneces-
sary to decide whether the largest part of a claim arose in his district or merely a
substantial part, for it was clear that "the claim should not be deemed to have arisen in a
district in which the defendant has had only miniscule contact . . . ." 374 F. Supp. at
892. Thus the *Arnold* court's use of *Honda* seems a bit misguided at best.
87. 389 F. Supp. at 1024 (citations omitted).

**406**

Federal Venue

that the weight of contacts test permits this flexibility, it provides a welcome gloss on the statute. As the cases illustrate, however, the test is not always understood, and when understood, it is not always so hospitably received. Weight of contacts analysis best adapts to conspiracy cases, or to cases involving a large number of acts by businesses or individuals with substantial contacts in many jurisdictions. The weakness of the present law lies in the danger that a court will weigh contacts with an eye to confining the number of districts that will be entitled to adjudicate the case. If as a policy matter the decision were made to permit venue in any forum with a logical connection to the lawsuit, the weight of contacts test would simply help the court to structure its decision on the logic and appropriateness of venue.

   2.   *Place of injury.*—The place of injury presents the major alternative to the weight of contacts approach.[88] Frequently in this area the test adopted by the court can only be inferred from the opinion; occasionally, a judge affixes a label to his analytic approach. Although courts apply this test most often to tort actions, it too has been used in the antitrust area. The first case to hold that the claim arose in the district where the injury occurred was *Rosen v. Savant Instruments, Inc.*,[89] a wrongful death action. The issue came before the court in the form of a motion to transfer under section 1404(a)[90] from the Eastern District of New York to the District of Rhode Island, where plaintiffs' decedent had been electrocuted. The court granted the transfer, stating simply that the claim obviously did arise in Rhode Island, because that was where the alleged wrongful death occurred.[91] This type of case benefits most from the 1966 amendment, and causes the least difficulty. Even in the tort area, however, the critical injury would be difficult to isolate in a business or products liability context. The fact of the matter is that several districts should all be equally available.[92] Despite the logic of multiple availability, place of injury seems more prone to give rise to indefensible and nit-picking exclusivity: in one patent infringement

   88.   Compare this with the old vested rights approach to choice of law. *See* Wechsler, *Introduction, supra* note 69; RESTATEMENT OF CONFLICTS §§ 311, 377 (1934).
   89.   264 F. Supp. 232 (E.D.N.Y. 1967).
   90.   Courts do not analyze where a claim arose any differently under the transfer statutes than upon a challenge to plaintiff's initial choice of venue, since a claim "might have been brought" only where venue was initially proper. *See* Van Dusen v. Barrack, 376 U.S. 612, 624 (1964); Hoffman v. Blaski, 363 U.S. 335, 342-43 (1960).
   91.   *See also* Miller v. Cousins Properties, Inc., 378 F. Supp. 711 (D. Vt. 1974).
   92.   As a practical matter, a number of districts are available to the products liability litigator. *See, e.g.,* Noyer, *Problems of Federal and State Court Jurisdiction and Venue in Products Liability Litigation—Defendant's Viewpoint,* 40 J. OF AIR L. & COM. 637 (1974).

**Pa68**

**407**

case, the court decided that the right to a declaratory judgment arose during a conference in New York, where the patentee threatened litigation, rather than in Ohio, where he filed suit ten days later.[93] In an indemnity case, the court with some justification upheld its own venue by referring back to the place of the original tort to determine where the claim arose.[94] Although sound reasons can be advanced for selecting the place of injury, in an indemnity action an equally persuasive argument can often be made for other locations, such as where the company paid the claim, or the company headquarters. Furthermore, while the logic of these decisions may be supportable after the fact, they offer little assistance as precedent.

The two antitrust cases that have employed the place of injury test are not easily distinguishable from those that used weight of contacts.[95] One possible difference, however, is the fact that both cases using place of injury involved the alleged destruction of one business. The court in each case made the assumption that the place of injury was the same as the company's headquarters, or principal place of business.[96] One judge explained his rejection of the weight of contacts approach by his inability to accept a scheme requiring "an evaluation of a specific calculus of contacts."[97] Certainly the weight of contacts test is vulnerable to charges of subjectivity or arbitrariness, which apparently lay behind the judge's objection. By the same token, place of injury can be accused of undue rigidity. The difficulty lies in the conflicting desires on the one hand for a reliable test, and on the other hand for a test so tailored to the facts under consideration that it produces the most convenient place of trial.

One court employed an inversion of the place of injury approach, turning its gaze to where the litigation results would be felt, in *Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western Railroad Co.*[98] Although the court asserted that venue for one defendant, the National Mediation Board, existed under section 1391(e),[99] it had

93. Uniroyal, Inc. v. Sperberg, 63 F.R.D. 55 (S.D.N.Y. 1973).
94. Kroger Co. v. Adkins Transfer Co., 284 F. Supp. 371 (M.D. Tenn. 1968), *aff'd sub nom.* Kroger Co. v. Dornbos, 408 F.2d 813 (6th Cir. 1969).
95. Iranian Shipping Lines, S.A. v. Moraites, 377 F. Supp. 644 (S.D.N.Y. 1974); Albert Levine Associates v. Bertoni & Cotti, 314 F. Supp. 169 (S.D.N.Y. 1970).
96. In an earlier opinion the *Albert Levine* court suggested that the place where plaintiff's distributorship was located might be where the injury arose. Albert Levine Associates v. Bertoni & Cotti, 309 F. Supp. 456, 461 n.9 (S.D.N.Y. 1970).
97. 377 F. Supp. at 647.
98. 290 F. Supp. 612 (D. Colo. 1968), *aff'd,* 411 F.2d 1115 (10th Cir. 1969).
99. 28 U.S.C. § 1391(e) (1970). This subsection establishes venue for suits in which each defendant is an officer or employee of the United States, or an agency of the United States.

Federal Venue

to rely on section 1391(b) to sustain venue for the union defendant. In what was probably dictum, the court commented that "[t]hough the particular action which plaintiff seeks to enjoin would be taken in the District of Columbia where the NMB is headquartered, the impact and operation of any such action would be felt in this district and it is here, therefore, that the cause of action arises."[100] What the injunction against the Board had to do with the location of actions taken by the union defendant the court left to the imagination. Nevertheless, the place where the impact of the relief requested from the lawsuit would be felt may be another conceivable place "where the claim arose," although it does seem to put the cart before the horse.

Another variation on place of injury analysis relies more directly on the location of the organization's headquarters as the place where the claim arose, without ever discussing whether or not injury actually occurred there. Thus in *Alameda Oil Co. v. Ideal Basic Industries, Inc.*,[101] the court held that it was preferable to litigate the claim in Colorado, where allegedly deceptive proxies and accompanying statements were prepared by the defendant company, instead of in Missouri, where the materials were received and shareholders presumably deceived. Apparently it felt that the claim "arose" in both districts, since it transferred under section 1404(a). In a case under the statute prohibiting the use of federally appropriated funds to influence a congressman's vote,[102] the court held that a claim against an unincorporated association of state unemployment offices arose in the District of Columbia, since the organization had a central office there, funds were appropriated there, and Congress met there.[103] This "nerve center" type of approach was also applied in a civil rights suit brought to declare unconstitutional a Pennsylvania rule suspending the driver's licenses of automobile accident judgment debtors.[104] On the other hand, in *Jimenez v. Pierce*,[105] a prisoner's civil rights suit in which the plaintiff wanted to sue in the district where the headquarters of the state agency he claimed had injured him was located, the court rejected "nerve center" venue. Plaintiff was incarcerated in the Northern District of New York, and all of the

100.  290 F. Supp. at 616.  The court cited Montana and California authority for its conclusion—persuasively, one would hope.
101.  313 F. Supp. 164 (W.D. Mo. 1970).
102.  18 U.S.C. § 1913 (1970).
103.  National Ass'n for Community Development v. Hodgson, 356 F. Supp. 1399 (D.D.C. 1973).
104.  Leonhart v. McCormick, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975).
105.  315 F. Supp. 365 (S.D.N.Y. 1970).

**Pa70**

**409**

Case 2:18-cv-14782-CCC-JBC   Document 8   Filed 06/24/19   Page 93 of 104 PageID: 130

activities listed in his complaint had occurred there. The court held that
even if the agency had directed the abuses from the Southern District,
the claim did not arise there. All relevant actions had taken place in the
Northern District; hence the weight of the contacts existed there. Thus
the headquarters test has received some acceptance, but if substantially
all of the activities were executed elsewhere, or if judicial economy
would be better served elsewhere, a court might order the suit tried in
that district, either on weight of contacts or place of injury grounds.

    *3.   Substantive law.*—In some cases the courts have made no
attempt to use a generalized venue test; instead they have searched for
rules from a particular substantive field to justify their results. In the
area of contracts, the dispute rages over whether the place of negotia-
tions, the place of execution, or the place of performance governs.[106]
Unhappily, the courts have viewed these as mutually exclusive. The
statute may not compel this interpretation, but the flexible attitude
manifested in more complex areas such as antitrust has not been carried
over to the more traditional areas. Trademark infringements, for exam-
ple, might arise in the district in which the products were sold, or they
might arise in the district where the name confusion occurred.[107] In
addition, by narrowing the inquiry to one substantive topic, the courts
have introduced a new complication. If this question is one of substan-
tive law, to which jurisdiction must they look for an answer? Since the
Supreme Court has specifically held that venue is procedural,[108] the
federal courts should not feel bound by the state law locating a cause of
action, although if no federal precedent exists the state rule might
provide useful guidelines. Ideally, any of the places commonly recog-
nized as significant to the claim would be permissible for venue.

    *4.   No reasoning.*—Some cases decided under the amendment
concluded so uninformatively that the claim did or did not arise in the
district that any attempt to rationalize the decision would be pure

---

    106. *See* Smith v. Murchison, 310 F. Supp. 1079 (S.D.N.Y. 1970) (contract claim
arose in district where contract executed and payments made, not in district where
preliminary negotiations took place); M. Dean Kaufman, Inc. v. Warnaco, Inc., 299 F.
Supp. 722 (D. Conn. 1969) (contract claim arose in district where contract was
formalized, not in district where party failed to perform).

    107. *See* Scott Paper Co. v. Scott's Liquid Gold, Inc., 374 F. Supp. 184, 190 (D. Del.
1974) (where confused); Car-Freshner Corp. v. Broadway Mfg. Co., 337 F. Supp.
618, 619 (S.D.N.Y. 1971) (where products sold, not where labels affixed or where
goods wrapped).

    108. *See* Denver & R.G.W.R.R. v. Brotherhood of R.R. Trainmen, 387 U.S. 556
(1967). Even according to the modern view, choice of law principles usually provide
that the forum state procedural rules apply regardless of which substantive law governs.
*See generally* RESTATEMENT (SECOND) OF CONFLICTS §§ 122-43 (1971).

**410**                                                          **Pa71**

Federal Venue

speculation. In some cases, the court relied on the facts in the record;[109] in other cases it set out facts that would support venue, but never spelled out the inferences it drew from those facts.[110] In some circumstances the courts referred to the allegations in the plaintiff's pleadings alone[111]—a practice defensible to a point, since under the better view the plaintiff bears the burden of proving venue once the defendant has raised the defense under Rule 12(b)(3) of the Federal Rules of Civil Procedure,[112] but less desirable than reviewing the entire record.[113] Some courts give no clue whatsoever, implicit or explicit, about their reasoning.[114] Perhaps these courts thought the answer so obvious that an explanation would be frivolous. Nevertheless, with the troubles plaguing other courts, it could only help the overall situation to articulate why a particular case was an easy one. Clear understanding of standards is essential if the area is to achieve any certainty and predictability.

5. *Evaluation.*—The consequences of inability to decide where a claim arose have ranged from dismissal of the case, to severance and transfer to another district, to a simple remand for further factfinding. The statute has truly failed in its purpose where, as in *Javelin Corp. v. Uniroyal, Inc.*,[115] a court sees no alternative to dismissal of the suit. In that case, a private antitrust action, the defendants' operations were national in scope, and the defendants themselves were scattered throughout the country. The only significant events in the Northern District of California were an industry-wide sales meeting and a meeting for the alleged purpose of approving illegal exclusionary arrangements. The defendants acted as agents for a manufacturing group within the district. After setting out these facts, the court concluded without further

109. Miller v. Cousins Properties, Inc., 378 F. Supp. 711 (D. Vt. 1974); Alabama Great Southern R.R. v. Allied Chem. Co., 312 F. Supp. 3 (E.D. Va. 1970).
110. McCrory Corp. v. Cloth World, Inc., 378 F. Supp. 322 (S.D.N.Y. 1974); Junior Spice, Inc. v. Turbotville Dress, Inc., 339 F. Supp. 1189 (E.D. Pa. 1972).
111. D'Amico v. Treat, 379 F. Supp. 1004 (N.D. Ill. 1974); Walker v. Kawasaki Motors Corp., 62 F.R.D. 607 (E.D. Tenn. 1973); Morton Bldgs. of Nebraska, Inc. v. Morton Bldgs., Inc., 333 F. Supp. 187 (D. Neb. 1971).
112. *See generally* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352 (1969).
113. *See* Davidge v. White, 377 F. Supp. 1084 (S.D.N.Y. 1974) (case held pending submission of factual affidavits by both parties on the question of venue).
114. Daugherty v. Procunier, 456 F.2d 97, 98 (9th Cir. 1972); Kletschka v. Driver, 411 F.2d 436, 442 (2d Cir. 1969); United States v. Kahane, 396 F. Supp. 687 (E.D.N.Y. 1975); Litton Business Sys., Inc. v. Paul L'Esperance, Inc., 387 F. Supp. 1265 (E.D. Pa. 1975); Besuner v. Faberge, Inc., 379 F. Supp. 278 (N.D. Ohio 1974). *Cf.* Tiernan v. Westext Transport, Inc., 243 F. Supp. 566 (S.D.N.Y. 1965) (§ 1391(f) case); Smith v. Konsak, 230 F. Supp. 308 (E.D. Pa. 1964) (same).
115. 360 F. Supp. 251 (N.D. Cal. 1973).

Pa72

411

Case 2:18-cv-14782-CCC-JBC Document 8 Filed 06/24/19 Page 95 of 104 PageID: 132

discussion that neither venue nor personal jurisdiction was present in its
district and granted the defendants' motion to dismiss the case. Unless a
court actually believes plaintiff's claim to be frivolous or in bad faith, it
is hard to justify dismissing for improper venue, for section 1406(a)
does permit transfer in this situation. Furthermore, the same court
several years earlier had applied the weight of contacts test and found
that several contacts of significance with the jurisdiction were sufficient
to establish venue.[116] If the result in *Javelin* is the harbinger of a trend
toward stricter scrutiny of the propriety of venue, then that decision flies
in the face of the congressional trend to broaden permissible places of
trial. If the discrepancy in the two decisions simply points out the highly
subjective nature of the contacts evaluation, then perhaps the courts
need a better test or a more workable statutory standard.

In two recent cases, the courts felt it was important to pinpoint the
location of the accidents or transactions in order to place venue in the
precise district where the claim arose. In the first, *Davidge v. White*,[117]
the pleadings lacked sufficient factual allegations to enable the court to
make the determination, and therefore the case was remanded. Since the
complaint did allege that the claim was for recovery of funds that
defendant had obtained in stock transactions occurring within the dis-
trict, the court's approach was unnecessarily picky. The second, *Chance
v. E. I. DuPont de Nemours & Co.*,[118] was a multiple tort action brought
in New York, in which children from a number of states were injured by
blasting caps. First pointing out that the applicable substantive law was
not the law of New York, the court held that "[f]or this and other
reasons these actions must be severed and transferred to the federal
district court in the respective jurisdictions where the accidents oc-
curred,"[119] citing section 1404(a). Under section 1404(a), each claim
"might have been brought" in the state where the child was injured.
Considerations of judicial economy could lead either to approval or
disapproval of the court's action. On one hand, each child would be
trying to prove the same facts against the manufacturer, which argues
for keeping the action in New York. On the other hand, the New York
court must follow *Erie* and *Klaxon*, which require it to obey the New
York conflicts of law rules in a diversity case. It could therefore be in

116. California Clippers, Inc. v. United States Soccer Football Ass'n, 314 F. Supp.
1057 (N.D. Cal. 1970).
117. 377 F. Supp. 1084 (S.D.N.Y. 1974).
118. 371 F. Supp. 439 (E.D.N.Y. 1974).
119. *Id.* at 441.

HeinOnline -- 54 Tex. L. Rev. 412 1975-1976

Federal Venue

the position of applying the law of six or seven different states in one trial, probably a difficult and time-consuming task. These problems are beyond the scope of the venue statute. Nevertheless, insofar as federal venue is concerned, it should be clear that the New York court could keep the case if it decided in its discretion that the claim arose in the place of manufacture as well as in the place of injury. Hopefully the *Chance* court was transferring "in the interest of justice" and not because it believed it was compelled to refuse venue.

As the variety of tools the courts have evolved to answer the question where the claim arose indicates, the 1966 amendment to the venue statute spawned litigation where none had existed before.[120] Events that give rise to lawsuits do not tend to be packaged neatly with labels informing observers of their origins. At present, venue becomes an issue in the case when the defendant asserts improper venue in a responsive pleading or motion under Rule 12(b)(3).[121] If the defense is not properly raised by a motion or in a responsive pleading, Rule 12(h)(1) provides that it is waived.[122] Once the issue is raised, some confusion exists as to which party bears the burden of proving his point.[123] Professors Wright and Miller take the view that the obligation should be the plaintiff's, since plaintiff must justify jurisdiction.[124] This rule makes sense, provided that the showing plaintiff must make is not too difficult. The best solution to the problems with the current venue statute would require plaintiff to make a prima facie showing of proper venue. To support his chosen forum, plaintiff should need to demonstrate only that the district bears some logical relationship to the claim. The weight of contacts test as applied in *Arnold v. Smith Motor Co.*,[125] mandating rejection only for districts with minisucle contacts, embodies the spirit of this approach. Once plaintiff's prima facie case is made out, defendant could not change districts without a strong showing of incon-

---

120. Although there has been a fair amount of litigation in the district courts on the meaning of the new phrase, very few cases have reached the courts of appeals. This probably results in part from the newness of the statute, but more importantly from the parties' unwillingness to expend the time and money necessary to litigate venue that persistently. Nevertheless, this puts the district courts in a difficult position, since they lack guidance on the resolution of the problems that have arisen.

121. FED. R. CIV. P. 12(b)(3).

122. *Id.* 12(h)(1).

123. *Compare* United States v. Orshek, 164 F.2d 741 (8th Cir. 1947) (burden on defendant), *with* Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182 (7th Cir. 1969) (burden on plaintiff).

124. 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352, at 570 (1969).

125. 389 F. Supp. 1020 (N.D. Iowa 1974).

**Pa74**

**413**

venience.[126] If defendant were able to meet this stringent test, the court would have the power to transfer under either section 1406(a), if it decided that venue was utterly improper, or under section 1404(a), if it decided that a more convenient district existed. Absent fairly extraordinary circumstances, plaintiff's choice should stand undisturbed.

The American Law Institute's proposal, which provides for venue where "a substantial part of the events or omissions giving rise to the claim occurred,"[127] would facilitate and encourage this approach. The drafters took care to insure that more than one district might satisfy the standard.[128] Although they acknowledged that controversy was possible over what constituted "a substantial part," their feeling was that difficulties would arise only when the plaintiff was taking a deliberate chance.[129] The correctness of this conclusion depends entirely on a court's interpretation of the word "substantial." If it construes the word to include anything not insubstantial or insignificant, like the *Arnold* court, then the drafters were probably right. Subject to a de minimis limitation, plaintiff's choice of venue would always be upheld unless he were guilty of bad faith or unless defendant could persuade the court to transfer on a strong showing of inequity. The danger nevertheless exists that the courts will read "substantial" as something analogous to over fifty percent, or over thirty percent, like the *Chance* court. If this happens, then the ALI's proposal would simply add one more question to be litigated.

It is difficult to capture in words the precise factors that would guarantee the more desirable construction. Perhaps it is better to stop talking about parts of claims and to say simply that the plaintiff's choice of venue should be upheld if his claim bears a logical connection to the forum, unless the defendant makes a satisfactory showing of hardship. Under this formulation, plaintiff's initial showing would be quite easy; in most controverted cases the defendant would bear the burden of upsetting plaintiff's choice. In this way venue matters may be relegated at last to the secondary position they deserve. After all, little harm would result if a federal question case were litigated in one district

---

126. *See* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); North Branch Prod., Inc. v. Fisher, 284 F.2d 611 (D.C. Cir. 1960), *cert. denied*, 365 U.S. 827 (1961); Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F. Supp. 247 (S.D.N.Y. 1974); Combustion Eng'r, Inc. v. Black, Sivalls & Bryson, Inc., 316 F. Supp. 660 (W.D. Mo. 1970).

127. ALI STUDY, *supra* note 43, §§ 1303, 1314.

128. *Id.* at 137.

129. *Id.*

Pa75

HeinOnline -- 54 Tex. L. Rev. 414 1975-1976

Federal Venue

rather than another. If the premise behind diversity jurisdiction is the need for unbiased, unprejudiced forums for citizens of different states, one federal court should be as good as another. The original court is always free to transfer to a court in the state whose law will apply if the facts warrant the transfer. Plaintiffs should not be forced to second-guess a court's view of where a claim arose if their choice of venue is at all defensible.

### D.   Other Problems

*1.   Service of process.*—At the time Congress amended the venue statute, commentators criticized the revised version for its continued reliance on the long-arm statute of the forum state with regard to amenability to process.[130] If a defendant was not amenable to process from any district in which venue was appropriate, plaintiff would still be frustrated in his lawsuit. Happily, this has proved to be a lesser problem than the general confusion about the distinction between personal jurisdiction requirements and venue requirements. Service of process is normally controlled by state law, while venue is governed by a federal statute.[131] Yet in one case a federal court relied on state venue decisions to resolve questions of personal jurisdiction.[132] Even worse, another court purported to rely on section 1391 for jurisdiction over the subject matter.[133] Some courts appear to equate amenability to process with satisfaction of venue requirements.[134] Thus the more frequent problem with personal jurisdiction arises from a failure to make a sharp distinction between the concepts of power over the person and convenience of the lawsuit's location; the federal courts' technical dependence on the scope of the applicable state long-arm statute has forced very few dismissals.[135]

---

130. Foster, *supra* note 51. *See* FED. R. CIV. P. 4.

131. *See* notes 142 to 167 *infra* & accompanying text, on the debate over the role state law plays within the federal statute.

132. Deering Milliken Research Corp. v. Textured Fibres, Inc., 310 F. Supp. 491 (D.S.C. 1970).

133. Langston v. Ciccone, 313 F. Supp. 56 (W.D. Mo. 1970).

134. Colorado-Florida Living, Inc. v. Deltona Corp., 338 F. Supp. 880 (D. Colo. 1972) (same test used to determine transaction of business for purposes of state long-arm statute and federal venue statute "where the claim arose"); Hawaii Credit Card Corp. v. Continental Credit Card Corp., 290 F. Supp. 848 (D. Haw. 1968) (confused constitutional limits of long-arm jurisdiction with venue statute's requirements).

135. The only case since the 1966 amendment to dismiss for personal jurisdiction limitations in the state long-arm statute appears to be Parham v. Edwards, 346 F. Supp. 968 (S.D. Ga. 1972), *aff'd per curiam*, 470 F.2d 1000 (5th Cir. 1973).

Pa76
**415**

2. *Division venue.*—Whether the claim should be heard in one particular division of a district poses a greater problem than service of process. One court, citing sections 1391(b) and 1406(a), transferred a claim to another division within its district.[136] The court's use of section 1406(a) indicates that it thought venue was improper in its own division. This restrictive gloss on the statute is unnecessary, because sections 1391(a) and (b) nowhere mention division, and transfers from one division to another within a single district would do nothing but prolong the litigation.

In *Torres v. Continental Bus Systems, Inc.*,[137] the district court justified its transfer of the case to another division within the district by reasoning that section 1393(a)[138] confers a personal privilege on the defendant to be sued in the division of its residence. Since section 1391(c) makes a foreign corporation suable anywhere that it does business, the corporation is considered a resident of that district for venue purposes. Therefore, the court reasoned, a corporation is a resident of the divisions where it does business for purposes of section 1393(c). The *Torres* court did not consider two arguments later advanced by another district court in *Medicenters of America, Inc. v. T and V Realty & Equipment Corp.*[139] that would lead to a different result. First, section 1393 might come into play only if the defendant's residence is the sole basis for venue. Where venue can rest on another basis, such as the plaintiff's residence or the place where the claim arose, venue is proper in any division within the district. Second, by referring to the place "where *he* resides," Congress may have intended to limit division venue under section 1393(a) to individual defendants. Section 1391 itself uses the pronoun "it" where it intends to refer to corporations, and it avoids pronouns where both corporations and natural persons are covered.[140]

The contrast between the general venue statute and the venue statute governing removal, 28 U.S.C. § 1441(a), also suggests that

---

136. Wingard v. North Carolina, 366 F. Supp. 982 (W.D.N.C. 1973).
137. 204 F. Supp. 347 (S.D. Tex. 1962).
138. 28 U.S.C. § 1393(a) (1970) provides: "Except as otherwise provided, any civil action, not of a local nature, against a single defendant in a district containing more than one division must be brought in the division where he resides."
139. 371 F. Supp. 1180 (E.D. Va. 1974) (alternative holding).
140. Within the general venue statutes, the pronoun "it" refers to a corporation. *See* 28 U.S.C. § 1391(c) (1970). *But see id.* § 1400(a) (patent and copyright venue—refers to defendant or *his* agent); *id.* § 1401 (stockholder's derivative action venue—refers to stockholder on behalf of *his* corporation). In contrast, sections 1391(a) and (b) do not use pronouns.

**416**

Federal Venue

division is of no independent significance in the former instance. The removal venue statute expressly directs the court to look to the district and division embracing the place where the action is pending. Thus, removal venue relies indirectly on the venue statute of the state where the action was originally brought. The absence of this kind of limiting language in section 1391, and the undesirability of restricting venue where Congress did not mandate restriction both suggest that division venue should not apply to the language "where the claim arose." Similarly, state statutes setting venue for state lawsuits should be irrelevant, or at most only persuasive authority, in determining federal venue under section 1391.[141]

3. *What law governs.*—At the time Congress amended the venue statute in 1966, the question whether state law or federal law would govern "where the claim arose" would not have been likely to excite controversy. It was "hornbook law that where a federal statute fixes the venue of the federal courts, state laws are inapplicable."[142] Courts regularly recited the need for a uniform federal standard for venue[143] and the unacceptability of permitting state venue laws to interfere with this standard.[144] Thus, after the 1966 amendment had been in operation for a time, it came as a great surprise to many that the problem of applicable law should be an issue at all.

The Sixth Circuit discussed the policies behind the venue statutes in some detail in *Miller v. Davis,*[145] a diversity case. The district court had erroneously concluded that a Kentucky choice of law rule precluded federal jurisdiction. After the court of appeals firmly corrected that misconception, it reached the venue issue. It held explicitly that venue was a procedural matter within the *Erie* doctrine and that state venue law did not control federal venue.[146] The importance of uniform application of the federal venue statutes was too great to permit state laws to

---

141. *See* text accompanying notes 142-167 *infra.*
142. Murphree v. Mississippi Publ. Corp., 149 F.2d 138, 140 (5th Cir. 1945), *aff'd,* 326 U.S. 438 (1946). *See generally* 1 W. BARRON & A. HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE § 71 (Wright ed. 1960); 1 J. MOORE, FEDERAL PRACTICE ¶ 0.140 [1.-3-1] (1975). Neither state substantive law nor state venue law should be conclusive on a question of federal procedural law.
143. Remington Rand, Inc. v. Knapp-Monarch Co., 139 F. Supp. 613, 617 (E.D. Pa. 1956).
144. Standard Ins. Co. v. Isbell, 143 F. Supp. 910, 912 (E.D. Tex. 1956); Shaffer v. Tepper, 127 F. Supp. 892, 894 (E.D. Ky. 1955); Neal v. Pennsylvania R.R., 77 F. Supp. 423, 425 (S.D.N.Y. 1948).
145. 507 F.2d 308 (6th Cir. 1974).
146. *Id.* at 316.

override them.[147]

    Confronted with a related issue, the Third Circuit also pointed out that the venue of federal courts is a matter of federal law; a state may not modify or repeal a federal venue statute by its own legislation.[148] This holds true whether subject matter jurisdiction rests on a federal question or on diversity.[149] Other courts have held that federal law governs whether a corporation is "doing business" for section 1391(c) purposes.[150] Many lower courts have supported this view. In *Honda Associates, Inc. v. Nozawa Trading, Inc.*[151] the court said that state personal jurisdiction laws have no effect on the interpretation of the federal venue statute.[152] Other courts have simply reaffirmed the vitality of the old rule that venue fixed by a federal statute must be determined by federal law.[153] The farthest any court has gone without abandoning the principle is to say that state law may be a significant aid in interpreting the federal standard of section 1391.[154] Even this much might be an unnecessary concession.

    The district court decision in *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*[155] bears responsibility for the notion that state law determines where a claim arose in a diversity case. The court started from the premise that venue is a substantive right, citing the Sixth Circuit's decision in *Still v. Rossville Crushed Stone Co.*[156] as authority.[157] Unfortunately, the court read *Still* incorrectly, although its mistake was understandable, given the confused opinion in *Still*. The *Still* court was considering a traditional local cause

---

147. *Id.* at 317.
148. Federal Deposit Ins. Corp. v. Greenberg, 487 F.2d 9 (3d Cir. 1973). *Cf.* Van Dusen v. Barrack, 376 U.S. 612 (1964) (state law on appointment of ancillary estate administrator does not affect federal venue).
149. 487 F.2d at 12.
150. Houston Fearless Corp. v. Teter, 318 F.2d 822, 825 (10th Cir. 1963); Samson Cordage Works v. Wellington Puritan Mills, Inc., 303 F. Supp. 155, 161 (D.R.I. 1969).
151. 374 F. Supp. 886 (S.D.N.Y. 1970).
152. *Id.* at 889. *See* International Business Coordinators, Inc. v. Aamco Automatic Transmissions, Inc., 305 F. Supp. 361, 364 (S.D.N.Y.1969) (venue under 15 U.S.C. § 15 (1970)).
153. Jaffe v. Dolan, 264 F. Supp. 845, 848 (E.D.N.Y. 1967); *see* Iaquinta v. Sloan, 350 F. Supp. 203, 204 (N.D.W. Va. 1972); *cf.* Control Data Corp. v. Carolina Power & Light Co., 274 F. Supp. 336, 340 (S.D.N.Y. 1967).
154. Masterson v. First Fed. Sav. & Loan Ass'n, 53 F.R.D. 313, 316 (E.D.N.Y. 1971).
155. 291 F. Supp. 252 (E.D. Pa. 1968).
156. 370 F.2d 324 (6th Cir. 1966).
157. 291 F. Supp. at 260.

**Pa79**

**418**

Federal Venue

of action.[158] After it distinguished jurisdiction and venue on rather conventional grounds, it proceeded to ask "whether under the law of Tennessee judicial authority could be . . . exercised over the subject matter of this cause."[159] Finding that Tennessee law said that injury to real estate located in another state was not within the jurisdiction of the Tennessee courts, the court quite properly dismissed the case. All it did was apply state substantive law to a local action over which it had diversity jurisdiction, in accordance with the *Erie* doctrine. The Sixth Circuit itself in *Miller*, decided several years after *Philadelphia Housing*, went to some trouble to point out that *Still* was a local action case, having nothing to do with section 1391 venue;[160] it certainly was not a holding that venue is a matter of substantive law. Thus, the entire premise of the *Philadelphia Housing* dictum that state law governs venue determinations under section 1391(a) was faulty.[161]

Notwithstanding the fundamental problem with the *Philadelphia Housing* suggestion for diversity cases, a number of courts accepted the reasoning and applied it in their own decisions. In *Ryan v. Glenn*[162] the court held that the question where the claim arose depended on state substantive law, because "the claim" meant "the aggregate of operative facts giving rise to a right enforceable in the courts,"[163] and it also cited *Philadelphia Housing*. The problem with its first ground of decision is the circularity of the reasoning. One does not have a claim enforceable in the federal courts until he has properly brought himself before the court procedurally, by establishing subject matter jurisdiction, personal jurisdiction over the defendant (or jurisdiction over the res), and venue. Thus it is just as easy to argue that "the claim" refers to federal standards as it is to assert that it must incorporate state law by implication, which would be the legitimate way to bring state law into the picture. The *Ryan* court even conceded that "it might be argued that venue is procedural and purely a question of federal law under *Erie*," but it found the *Philadelphia Housing* view "more practical," and it decided rather arbitrarily to follow it, having found no case law to the

158. The district court in Graham v. Hamilton County, 266 F. Supp. 623 (E.D. Tenn. 1967), recognized the old local/transitory distinction at work in *Still*.
159. 370 F.2d at 325.
160. 507 F.2d at 316 n.16.
161. The conclusion was dictum because the case actually before the court was a federal question case, for which the court applied a federal standard.
162. 52 F.R.D. 185, 192 (N.D. Miss. 1971). *Accord,* Warren Bros. Co. v. Community Bldg. Corp., 386 F. Supp. 656, 662 (M.D.N.C. 1974) (dictum).
163. 52 F.R.D. at 192.

**Pa80**

**419**

contrary.[164] The only conceivable practicality *Philadelphia Housing* could offer would exist if substantive law provided the test for where the claim arose; but as the federal courts develop uniform standards themselves, even in this area the stronger argument lies on the side of a federal test. The other courts that have adopted a state standard have simply assumed that they were required to do so, adding nothing to the rationales of the courts that had preceded them.[165]

Since both *Philadelphia Housing* and *Ryan* came after the Supreme Court's decision in *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*,[166] it is curious that the courts could have reached the conclusion that the 1966 amendment required reference to state substantive law for the first time. The Court, albeit in the context of deciding whether the amendment could be applied to pending cases, clearly stated that the revision did not change the substantive law applicable to the case, and that it was wholly procedural.[167] Logic, as well as preamendment precedent and the holding of *Denver & Rio Grande*, compels the conclusion that federal law alone governs the question of federal venue. A contrary deduction based on a misunderstanding of one brief per curiam court decision is neither desirable nor inevitable.

## III.   Conclusion

Despite the problems that have arisen, the 1966 amendment to the federal venue statute was a step in the right direction. Many of the difficulties encountered in the construction of the phrase added by the amendment would be obviated if the requirements for plaintiff's prima facie showing were extremely light, and the burden heavy on the defendant seeking to move the case. In addition, it should be clear that any district with more than miniscule contacts would satisfy the statute, either by reading the present language broadly or by adding a logical connection standard. This would be entirely consonant with the liberalizing purpose behind the amendment; any inequities caused by the rule could be alleviated by judicious use of the transfer statutes. If the statute

---

164. *Id.*  The court does cite Comment, *Federal Venue Amendment—Service of Process, Erie and Other Limitations*, 16 CATH. U.L. REV. 297 (1967).

165. Geodynamics Oil & Gas, Inc. v. U.S. Silver & Mining Corp., 358 F. Supp. 1345 (S.D. Tex. 1973); Paragon Int'l N.V. v. Standard Plastics, Inc., 353 F. Supp. 88, 91 (S.D.N.Y. 1973).

166. 387 U.S. 556 (1967).

167. *Id.* at 563.  *See* note 142 *supra*.

Pa81

HeinOnline -- 54 Tex. L. Rev. 420 1975-1976

Federal Venue

is applied and construed in a generous spirit, statutory change is proba-
bly unnecessary. The courts must articulate fully the bases for their
decisions, so that the analytic approaches they are using will develop
stability. Finally, uniformity and certainty in venue law cannot be
realized until the courts recognize that federal law governs the question
where the claim arose in diversity as well as federal question cases. By
deciding that the primary goal is to litigate cases on the merits, rather
than on subsidiary procedural issues, the federal courts will find it easier
to administer the statutory scheme for venue in the best interest of both
the litigants and the judiciary.

Pa82

421